**MISSOURI PUBLIC SERVICE COMPANY, Appellant,**

v.

**PLATTE–CLAY ELECTRIC COOPERATIVE, INC.,**
**Respondent.**

No. 66830.

Supreme Court of Missouri,
En Banc.

Nov. 21, 1985.

Rehearing Denied Dec. 17, 1985.

John R. Phillips, William H. Sanders, James D. Conkright, Preston Dean, Kansas City, for appellant.

Eugene J. Feldhausen, Donald W. Petty, Kansas City, for respondent.

Gary W. Duffy, Mark W. Comley, Jefferson City, for amici curiae Investor-Owned Utilities.

Rodric A. Widger, Eugene E. Andereck, Jefferson City, for Assoc. of Mo. Elec. Co-op., Inc.

ROBERTSON, Judge.

This is a suit for injunction and declaratory relief brought by the Missouri Public Service Company (hereafter MoPub) against Platte-Clay Electric Cooperative, Inc. (hereafter the Cooperative) to declare MoPub's exclusive right to provide electric service to a tract of land within MoPub's franchise area presently served by the Cooperative. The issue is whether § 394.315, RSMo Cum.Supp.1984, entitles a rural electric cooperative to provide a new kind of electric service to a unitary tract currently served by the cooperative in an urban area for which an electrical corporation has been granted a franchise. The trial court ruled that the Missouri Public Service Commission has original jurisdiction over this matter and dismissed the appellant's petition. The Court of Appeals, Western District, reversed. This Court granted transfer to examine this issue of first impression. For the reasons stated herein, we affirm.

The trial court prepared extensive and thoughtful findings of fact. Neither party raised an objection to those findings. The trial court's findings of fact, therefore, are controlling.

Appellant MoPub is a public utility operating under a Certificate of Convenience and Necessity from the Missouri Public Service Commission. In 1957, the City of Kansas City granted appellant a 30-year franchise to provide electrical service to certain parts of Kansas City. In 1962, MoPub's franchise was extended to include certain newly annexed areas of Kansas City including the subject property in Platte County, Missouri.

Respondent is a rural electric cooperative existing under and subject to the Rural Electric Cooperative Law, Chapter 394, RSMo 1978 (as amended). The Cooperative provided electrical service to the subject property on December 28, 1981, when it was purchased by the DeLaval Division of Alfa-Laval, Inc. (hereafter DeLaval), a Swedish corporation engaged in the business of developing and marketing, among other things, dairy equipment, including milking machines, milk processing equipment, vacuum pumps, tank coolers, waste management products and computer controlled feeding systems. Respondent continued to supply electrical service to the property after December 28, 1981, continuously and exclusively.

The subject property, which has not been subdivided, consists of approximately 80 acres of land. Prior to DeLaval's purchase, the Ramey family operated the property as a family farm. The Ramey farm was improved by a small, one-story frame house, a two-car garage, a small barn and a small shed.

The electrical service to the property at the time of DeLaval's purchase, and on August 13, 1982, was a single-phase electrical transmission line to the farm house and to one light bulb in the garage. DeLaval razed the farm house and the barn and erected a new, modern house and new farm structures to provide an in-use environment for dairy product testing, including an up-to-date dairy barn.

DeLaval found that the single-phase electrical service to the property was insufficient to support its activities there. In response to DeLaval's electrical service requirements, in October, 1982, respondent began to provide three-phase delta electrical service to the property. Three-phase delta service had never been provided to the property prior to its purchase by DeLaval. The DeLaval facility also required and continues to require an increased volume of electricity and higher voltages than did the property prior to DeLaval's purchase.

Rural electric cooperatives are authorized "for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas." § 394.030, RSMo 1978. A "rural area" is defined as "any area of the United States not included within the boundaries of any city ... having a population in excess of 1500 inhabitants." § 394.020, RSMo 1978. By its passage of the rural electric cooperative law, the General Assembly intended to en-

courage the provision of electric service to persons living in rural areas not otherwise served with electricity. *Missouri Public Service Co. v. Platte-Clay Electric Cooperative,* 407 S.W.2d 883, 894 (Mo.1966) (hereafter *MoPub I*).

█ The General Assembly recognized that rural areas do not always remain so. Section 394.080(4), RSMo Cum.Supp.1984, provides that where a cooperative had been providing retail electric service in a rural area which was subsequently annexed, the cooperative maintains the authority to continue to provide electric service until such time as a municipality or a franchisee of the municipality may purchase the physical property of the cooperative. A cooperative is under no obligation to sell its assets and may continue to operate with its existing customer base at the time of annexation if it so chooses. *MoPub I.*

Appellant relies on *MoPub I* at 892, for its position that it has the exclusive right to provide electric service to the DeLaval facility. *MoPub I* is the first of several appellate decisions attempting to resolve the dispute which continues to exist between appellant and respondent. *See also Missouri Public Service Company v. Platte-Clay Electric Cooperative, Inc.,* 435 S.W.2d 350 (Mo.1968) (*MoPub II*), and *Missouri Public Service Company v. Platte-Clay Electric Cooperative, Inc.,* 532 S.W.2d 800 (Mo.App.1975) (*MoPub III*). As the seminal case, *MoPub I* stands for the proposition that a cooperative has the authority to continue to provide service after annexation to:

(1) Members [of the cooperative] receiving service at the time of annexation; (2) persons accepted as members who become subsequent occupants of houses and places of business actually connected to the cooperative's lines on the date of annexation ... and (3) persons to whom membership predating annexation may be transferred in compliance with the provisions of the bylaws [of the cooperative].

*MoPub I* at 894.

Appellant argues that the new DeLaval facility does not fall within any of the three

classes to which a cooperative may continue to provide electrical service after annexation under *MoPub I.* As far as it goes, appellant's argument is correct. DeLaval was not a member of the Cooperative at the time of annexation, 1962. The new facilities constructed by DeLaval on the Ramey farm were not actually connected to the Cooperative's lines on the date of annexation. The record does not reveal that the Ramey's membership in the Cooperative was transferred to DeLaval or that the by-laws of the Cooperative permit such a transfer.

On August 13, 1982, two new Missouri laws, codified as § 393.106 and § 394.315, RSMo Cum.Supp.1984, took effect. In pertinent part, § 394.315 provides:

*Every rural electric cooperative shall be entitled to continue to supply retail electric energy to persons at metering points at which service is being provided on August 13, 1982....* Provided, however, that the public service commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential.... (Emphasis added.)

Section 393.106 contains the corollary to Section 394.315, providing in pertinent part as follows:

[N]o electrical corporation ... shall be permitted ... to supply retail electric energy to any person at a location where said person is receiving ... retail electric energy from another supplier of electric energy. Provided, however, that the [Public Service] commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential.

Sections 393.106 and 394.315 change the law announced in *MoPub I.* The application of these statutes, and not this Court's holding in *MoPub I,* determines which of these competing parties may serve the DeLaval facility.

Appellant and respondent agree that the Cooperative supplied retail electric energy

to the DeLaval facility on August 13, 1982, the effective date of §§ 393.106 and 394.315. Each urges an interpretation of these statutory provisions which supports its position.

The language of the statutes does not invite interpretation; it is clear and unambiguous. The General Assembly expresses its policy in two ways: first, that a supplier of retail electric energy is *entitled* to continue to supply such energy to "persons at metering points" being supplied on the effective date of the law, § 394.315, and second, in the converse, that "no electrical corporation ... shall be permitted ... to supply retail electric energy to any person at a location" where such a person is presently receiving electric service from another supplier. § 393.106.

■ Appellant urges that the statutes make a distinction between the *kind* of retail electric energy supplied on August 13, 1982. Such a distinction is based on *MoPub I*, which is no longer controlling. The plain language of §§ 393.106 and 394.315 makes no such distinction. Both single-phase and three-phase delta electricity are retail electric energy. The statutes create distinctions between *suppliers* of electric energy, not between *kinds* of electric energy supplied. In the absence of ambiguity, this Court will not interpret the statutes to create the distinction appellant urges.

The sole remaining question is whether the statutes apply to the facts presented by this case. Appellant argues that they do not. Under appellant's theory, the metering point changed when the three-phase delta electrical service replaced the single phase service supplied to the property on August 13, 1982. Because the new three-phase meter is located at a different physical location on the research facility, appellant suggests, §§ 393.106 and 394.315 are not controlling.

■ The flaw in appellant's argument is that it takes the phrase "metering point" found in § 394.315 out of context. Read together with its corollary provision, § 393.106, and in context, the phrase "persons at metering points" is synonymous with the phrase "person at a location." A metering point, then, is a *unitary* tract of land served by a supplier of retail electric energy.

■ On August 13, 1982, the Cooperative served the DeLaval facility with retail electric energy. The DeLaval facility is a "metering point" within the meaning of § 394.315; it is also a "location" within the meaning of § 393.106. Under § 393.106, appellant is not permitted to supply retail electric energy to the DeLaval facility absent a finding by the Public Service Commission that a change in supplier is in the public interest.

Appellant argues that to define "metering point" as a geographic tract of land would permit a large, industrial customer to purchase a single tract of land presently served by the Cooperative and remain a customer of the Cooperative even though appellant holds a franchise in that area. Such a result would be absurd, in appellant's view and therefore contrary to the canons of construction. *State ex rel. Dravo Corp. v. Spradling*, 515 S.W.2d 512, 517 (Mo.1974). Appellant further urges that such a reading is at odds with the general policy of the law which authorizes rural electric cooperatives to provide electricity in rural, not urban areas. *MoPub I.*

The answer to appellant's argument is the provision in § 393.106 and § 394.315 that the Public Service Commission may order a change in the supplier of retail electric energy if such a change is in the public interest. The General Assembly intended that the Commission, considering its familiarity with and expertise in matters concerning the provision of electric energy, would be in the best position to make judgments regarding the appropriate supplier of electricity in formerly rural, now urban by annexation, settings. Any determina-

tion by the Public Service Commission will be subject to judicial review, of course.

The judgment of the trial court is affirmed.

BILLINGS, BLACKMAR, DONNELLY, WELLIVER and RENDLEN, JJ., and SEILER, Senior Judge, concur.

HIGGINS, C.J., not sitting.