**UNION ELECTRIC COMPANY, Plaintiff-Appellant,**

v.

**CUIVRE RIVER ELECTRIC CO-OPERATIVE, INC., and Flower Homes, Inc., Defendants-Respondents.**

No. 51107.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 27, 1987.

Motion for Rehearing and/or Transfer Denied Feb. 24, 1987.

Application to Transfer Denied April 14, 1987.

der in the first or second degree must be submitted if justified by the evidence."

Francis X. Duda, St. Louis, for plaintiff-appellant.

Rodric Alan Widger, Jefferson City, Richard D. Hardcastle, St. Louis, for defendants-respondents.

SMITH, Presiding Judge.

Plaintiff, Union Electric, appeals from an order of the trial court dissolving a temporary restraining order against defendants and dismissing Union Electric's petition for preliminary and permanent injunction. The basis of the court's order was a lack of jurisdiction.

The dispute involves whether plaintiff or defendant Cuivre River Electric Cooperative has the right to provide electric service to a residential development of intervenor-defendant Flower Homes, Inc.

The development is located on a 43 acre tract of land. On August 13, 1982 that tract was part of an 80 acre tract owned by one Erker. The entire 80 acres was farmland and the only electric service was provided to the Erker farmhouse near which was located the meter. On November 28, 1983, the 43 acre plot was purchased by Kaplan properties. The 43 acre tract did not include the farmhouse or the meter and there was no separate electrical service to the 43 acres. In December 1983, the entire 80 acres was annexed by the City of O'Fallon, which has a population in excess of 1500. On March 12, 1984, Flower Homes purchased the 43 acre site from Kaplan. In August 1984, Cuivre River began furnishing electricity to the development site and in September 1984, Flower Homes signed an electric service agreement with Cuivre River. On October 19, 1984, the temporary restraining order was issued, accompanied by a bond. That order prevented Cuivre River from providing electric service to Flower Homes and Flower Homes from purchasing electric service from Cuivre River. A stipulation of facts was agreed to by the parties and a hearing of additional evidence occurred on December 4, 1984. At some time, unspecified in the record, the parties further stipulated that the application for preliminary injunction be held under advisement by the court pending a ruling by the Missouri Supreme Court in *Missouri Public Service Company v. Platte-Clay Electric Cooperative, Inc.* That case was decided November 21, 1985, became final on December 17, 1985, and on December 23, 1985, the order appealed from was entered.

Union Electric is an investor owned utility company which holds a certificate of convenience and necessity from the Public Service Commission, and a non-exclusive franchise from the City of O'Fallon to provide electricity within the boundaries of that municipality. It is an electrical corpo-

ration within the meaning of Chapters 386 and 393 RSMo 1978. Cuivre River is a rural electric cooperative organized under Chapter 394 RSMo 1978. Under Sec. 394.-030 RSMo 1978, Cuivre River is authorized to provide electrical energy in rural areas. "Rural areas" are those not within the boundaries of a municipality having a population in excess of 1500. Sec. 394.020. Cuivre River lacks the statutory authority to serve Flower Homes unless that authority is granted by Sec. 394.315 RSMo Cum. Supp.1984. That section, enacted in 1982, with an effective date of August 13, 1982, provides in pertinent part:

> "Every rural electric cooperative shall be entitled to continue to supply retail electric energy to persons at metering points at which service is being provided on August 13, 1982. Notwithstanding any other provision of law to the contrary, no rural electric cooperative shall be permitted or required to supply retail electric energy to any person at a location where said person is receiving, or has within the last sixty days received, retail electric energy from another supplier of electric energy. Provided, however, that the public service commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential, and the commision is hereby given jurisdiction over rural electric cooperatives to accomplish the purpose of this section ...."

This section has been termed by the parties as the "anti-flip-flop" statute and has its counterpart in Sec. 393.106 RSMo Cum. Supp.1984 dealing with electrical corporations.[1] Essentially the second sentence is designed to preclude customers from switching back and forth between electrical suppliers on the basis of rates and charges. The Supreme Court addressed the meaning of the first and third sentences of this section in *Missouri Public Service Company v. Platte-Clay Electric Cooperative, Inc.,* 700 S.W.2d 838 (Mo. banc 1985) (Mo.

Pub. IV) The parties here are not in agreement on the meaning of that opinion.

Plaintiff contends that "metering point" referred to in the statute is inapplicable to the Flower Homes development because the Erker tract has been subdivided, is no longer a unitary tract, and the metering point located on the Erker land is not a metering point for the Flower Homes development. Defendants contend that Mo. Pub. IV holds that jurisdiction of this case is in the Public Service Commission and that in any event the Flower Homes tract is part of the Erker "metering point."

We believe that in order to reach the jurisdiction issue it is first necessary to resolve the "metering point" issue. Under the statute the Public Service Commission is vested with jurisdiction over electric cooperatives only in those limited circumstances where both the cooperative and an electrical corporation have concomitant rights to serve the same area. Resolution of which should provide the service is the area of expertise of the commission referred to in Mo.Pub. IV [4]. Unless Cuivre River has the authority to provide electrical service to Flower Homes, there is no jurisdiction for the Public Service Commission to determine which company should provide the service.

We therefore address the question of Cuivre River's right to service Flower Homes. Mo.Pub. IV is distinguishable factually from this case, but the statements contained therein are useful in addressing the issue before us. The court held that the new statutes changed the previously existing law first enunciated in *Missouri Public Service Co. v. Platte-Clay Electric Cooperative,* 407 S.W.2d 883 (Mo.1966) (Mo.Pub. I). That decision had limited the right of an electric cooperative to continue to provide service after annexation of the service area by a municipality to three circumstances not implicated in Mo.Pub. IV or this case. Mo.Pub. IV stated that sections 393.106 and 394.315 control the continuation of an electric cooperative's service not

---

1. These sections were again amended in 1986. H.B. 1486. The new amendments, which deal more specifically with the issue before us, are inapplicable to this case which is governed by the 1982 enactment.

**418**

Mo.Pub. I. Those sections were held to be clear and unambiguous and express the legislative policy in two ways:

"(F)irst, that a supplier of retail electric energy is *entitled* to continue to supply such energy to 'persons at metering points' being supplied on the effective date of the law ... and second, in the converse, that 'no electrical corporation ... shall be permitted ... to supply retail electric energy to any person at a location where such person is presently receiving electric service from another supplier ....'" (Emphasis in original) Mo.Pub. IV [1].

The court further equated "persons at metering points" with "person at a location" and stated that a metering point is a unitary tract of land served by a supplier of retail electric energy. Id. [3].

 Union Electric contends that because of the subdivision of the land the Flower Homes tract is not a unitary tract with the Erker property. That is true and had the subdivision occurred prior to the effective date of the statute we would have little doubt that Cuivre River would have lost its right to service the Flower Homes tract. But the subdivision occurred after the effective date of the statute. On that date the entire Erker tract was a unitary tract served by Cuivre River. The statute is in the nature of a "grandfather" clause and establishes the right to service as of the date specified in its first sentence. On August 13, 1982, there was one metering point for the entire Erker tract, including the 43 acre tract, and service was being provided by Cuivre River to that metering point. The entire Erker tract was "the metering point at which service [was] being provided on August 13, 1982." Cuivre River was, under the statute "entitled to continue to supply retail electrical energy to persons" at that metering point. That includes the Flower Homes development. The subsequent subdivision and annexation of the tract does not preclude this service because additional metering points may be needed after August 13, 1982. As pointed out in Mo.Pub. IV the statute is addressed to the suppliers of electrical energy not the kind or quantity of the energy furnished. Id. [2]. Under the statute as interpreted by Mo.Pub. IV we find that Cuivre River is entitled to continue serving the Flower Homes development unless the Public Service Commission may otherwise order. The trial court was correct in dissolving the temporary restraining order and in dismissing the plaintiff's petition for temporary and permanent injunctive relief for lack of jurisdiction.

The order of the trial court is affirmed.

REINHARD and SIMON, JJ., concur.