**STATE of Missouri, ex rel. UNION ELECTRIC COMPANY, a Missouri Corporation, Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF MISSOURI, Respondent,**

**Cuivre River Electric Cooperative, Inc., Intervenor.**

**WD 40531.**

Missouri Court of Appeals, Western District.

Nov. 29, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 1989.

Application to Transfer Denied March 14, 1989.

Katherine C. Swaller, Paul A. Agathen, St. Louis, for appellant.

Rodric A. Widger, Stockard, Andereck, Hauck, Sharp and Evens, Jefferson City, for intervenor.

Andrew Snider, Jefferson City, for respondent PSC.

Before LOWENSTEIN, J., Presiding, and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Union Electric Company (Union Electric) appeals from a judgment of the Circuit Court of Cole County affirming an order of the Missouri Public Service Commission (Commission) in favor of intervenor, Cuivre River Electric Cooperative, Inc. (Cuivre River). The judgment is reversed and remanded with directions.

The facts are not in dispute. Cuivre River is a cooperative corporation and a rural electric cooperative as referred to in section 394.315, RSMo Supp.1984. Union Electric is a Missouri corporation and an

electrical corporation within the meaning of section 393.106, RSMo Supp.1984. St. Joseph Hospital West (hospital) is a hospital and related medical office complex in an unincorporated area of St. Charles County, Missouri. As of August 13, 1982, the effective date of the statute at issue, the site on which the hospital is now located contained no buildings or structures receiving electricity. At that time the site of the present hospital was comprised of four separate tracts of land capable of being bought and sold independently.

The Sisters of St. Mary, owner and operator of the hospital, purchased the real estate and contracted with J.S. Alberici Construction Company (Alberici) to build the hospital. Alberici requested that Cuivre River supply electric service to the hospital construction site. Cuivre River installed the meter in Alberici's name and began supplying electricity to the site on March 25, 1985, with the understanding that the service was to be temporary. On June 28, 1985, Cuivre River set the meter for temporary service to the hospital. As construction progressed, Cuivre River added additional lines and increased its service to Alberici. The Sisters of St. Mary never requested that Cuivre River supply electrical power to the Hospital or site. The Sisters of St. Mary negotiated with both Union Electric and Cuivre River for the provision of permanent electric service.

On November 22, 1985, Union Electric entered into an agreement with the Sisters of St. Mary to provide permanent electrical service to the hospital. In December, 1985, Cuivre River filed a complaint before the Commission requesting that Union Electric be prohibited from serving the hospital. On November 14, 1986, the Commission issued its Report and Order requiring Union Electric to cease and desist its efforts to serve the hospital since such service would violate the second provision of § 393.106, in that Cuivre River was already providing service to the hospital at the time Union Electric contracted with the Sisters of St. Mary. Union Electric's application for rehearing was denied, and it appealed to the Cole County Circuit Court where the Commission's decision was affirmed.

The question is whether Union Electric has violated § 393.106 by agreeing to provide electric service to the hospital. Section 393.106 provides in pertinent part:

Every electrical corporation and joint municipal utility commission shall be entitled to continue to supply retail electric energy to persons at metering points at which service is being provided on August 13, 1982. Notwithstanding any other provision of law to the contrary, no electrical corporation or joint municipal utility commission shall be permitted or required to supply retail electric energy to any person at a location where said person is receiving, or has within the last sixty days received, retail electric energy from another supplier of electric energy. Provided, however, that the commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential.

Cuivre River contends that if electric service is being provided to a "metering point" or "location," the provider of that electricity is entitled to continue service to that area, regardless of any change in the actual person being served. Since Cuivre River had been providing service to the hospital construction site ("metering point" or "location"), it is entitled to service the hospital at that location. Cuivre River further contends that temporary service to the hospital may not be distinguished from permanent service. Because the hospital location was receiving electric energy from Cuivre River from the time of the hospital's inception, the hospital may not now contract with the different provider.

Union Electric's position is that the first sentence of the statute gives Cuivre River the continuing right to serve Alberici ("persons") for so long as Alberici requires service at the hospital construction site. The second sentence, however, does not prohibit Union Electric from serving the hospital because the hospital ("said person") was not receiving electric service at the time Union Electric contracted to provide perma-

nent service to the hospital. Union Electric's position is correct.

It is presumed the legislature intended that every word, clause, sentence, and provision of a statute have effect and be operative. Conversely, it will not be presumed that the legislature inserted idle verbiage or superfluous language in a statute. *State ex rel. Ashcroft v. City of Sedalia*, 629 S.W.2d 578, 583 (Mo.App.1981). To accept Cuivre River's interpretation of the statute, this court would necessarily be required to ignore the nouns "persons" and "person" contained in the statute, or, at least to supply the word "whatever" to serve as an adjective modifying the nouns. In either event, the nouns would be without meaning. This court cannot presume that the legislature inserted the words "person" and "persons" as mere surplusage. The words must be presumed to have effect. Cuivre River focuses upon "metering point" and "location" and gives those words dominance over "person" and "persons"; however, nothing in the wording of the statute warrants such a construction. Rather, the intendment of the statute must be that there exists a relationship between the persons served and the locations serviced; the meaning of one qualifies the meaning of the other. To find otherwise would render portions of the statute meaningless.

In support of its interpretation, Cuivre River relies upon *Missouri Public Service Co. v. Platte–Clay Electric Cooperative, Inc.*, 700 S.W.2d 838 (Mo. banc 1985) (*Mo-Pub IV*), which interpreted a portion of § 393.106. In *MoPub IV*, the Missouri Public Service Company (MoPub) brought a suit for injunctive and declaratory relief against Platte–Clay Electric Cooperative (Cooperative) to determine whether MoPub had an exclusive right to provide electric service to a tract of land currently being served by the Cooperative. *Id.* at 840. Until the sale of the land to the DeLaval Division of Alfa–Laval, Inc., on December 28, 1981, a family farm was operated on the land. The Cooperative provided single-phase electrical service to the farm house

and the garage. As of August 13, 1982, the effective date of the statute, single-phase service was still being supplied to the property. *Id.* Subsequently, DeLaval razed the farmhouse and barn and erected a new house and new farm structures for a dairy product testing operation. The Cooperative continued to supply single-phase electrical service to the tract of land until October, 1982, when, at DeLaval's request, it began providing three-phase delta electrical service to the property. *Id.* MoPub contended that it should be permitted to service the DeLaval facility because the tract of land had been annexed to Kansas City and, thus, was covered by a franchise granted to MoPub by the City of Kansas City. *Id.*

The question in *MoPub IV* was whether the Cooperative had the right to service the DeLaval facility because it had previously been servicing the property, or whether MoPub could provide service because the dairy operation was located at a different "metering point" or "location," as those terms were used in § 393.106 and § 394.315.[1]

In analyzing the provisions of § 393.106 and § 394.315, the *MoPub IV* court said:

The language of the statutes does not invite interpretation; it is clear and unambiguous. The General Assembly expresses its policy in two ways: first, that a supplier of retail electric energy is *entitled* to continue to supply such energy to "persons at metering points" being supplied on the effective date of the law, § 394.315, and second, in the converse, that "no electrical corporation ... shall be permitted ... to supply retail electric energy to any person at a location" where such a person is presently receiving electric service from another supplier. § 393.106.

*Id.* at 842 (emphasis original). In holding that MoPub could not supply electric energy to the DeLaval facility, the court stated that "the phrase 'persons at metering points' is synonymous with the phrase 'person at a location.' A metering point, then, is a *unitary* tract of land served by a

---

**1.** Section 394.315, which addresses rural cooper-    atives, is essentially identical to § 393.106.

supplier of retail electric energy." *Id.* (emphasis original).

Relying on *MoPub IV,* Cuivre River contends that the construction area in the present case was a "metering point"; thus, Union Electric is prohibited from providing service to the hospital located on the same tract of land. If interpretation of "location" or "metering point" were the sole issue in this case, Cuivre River's reasoning might be persuasive under the holding of *MoPub IV.* However, although the phrases "persons at metering points" and "person at a location" were in question in *MoPub IV,* the emphasis on the words within those phrases in the present case is different. The focus of the present inquiry is directed toward "person" and "persons" and what meaning, if any, those words are to be given; whereas the *MoPub IV* court's sole emphasis was on the words "metering points" and "location," and the meaning of "person" or "persons" within the phrases was not addressed. Such a discussion would not have been relevant in *MoPub IV* because DeLaval was the person who had received electricity supplied to the farmhouse and, subsequently, to the new facility. Unlike the facts in *MoPub IV,* however, here there are two possible "persons" —Alberici and the hospital—in addition to two possible "locations" or "metering points." The holding of *MoPub IV,* therefore, is not binding on this court in the context of the question presented, and the words "persons" and "person" must be held to have meaning and effect.

Cuivre River contends the hospital is bound by Cuivre River's service to the completed hospital structure. The facts are undisputed that the cooperative was supplying retail energy on the hospital site after service was requested by Alberici. According to Cuivre River, the fact of Cuivre River's service to this person (The Sisters) at this location (hospital site) renders the discussion of "persons" irrelevant.

Admittedly, Cuivre River's contention does render the words "person," "persons," and "said person" not only irrelevant but meaningless in the context of the facts and circumstances of this case. If the words are to have meaning, as applied to The Sisters of St. Mary, the words obtain meaning only at such time as The Sisters of St. Mary may reasonably be expected to act as a separate entity, that is, to contract in its own name. To find to the contrary deprives The Sisters of St. Mary of the right to determine for itself the supplier from whom it will receive energy. The Sisters should be treated for this purpose no differently than persons who may succeed it at the hospital location. In the context of this case, The Sisters of St. Mary has not previously contracted to receive, nor has it received, electrical energy from Cuivre River. Thus, Union Electric has not violated the second provision of § 393.106.

Cuivre River contends that acceptance of Union Electric's position will result in wasteful duplication of electric services. Under this court's interpretation, however, the switching of suppliers by a person at a location where service is being received will still not be possible unless the Commission orders otherwise, as permitted by section 393.106, after a finding that a change of suppliers for a reason other than a rate differential is in the public interest. Under the clear wording of the statute, however, if the person changes, the service may change.

The cause is remanded to the circuit court with directions to remand to the Commission with directions that Cuivre River's complaint be dismissed.

All concur.