**UNION ELECTRIC COMPANY,**
**Plaintiff/Appellant,**

v.

**PLATTE–CLAY ELECTRIC COOPERA-**
**TIVE, INC., Defendant/Respondent.**

**No. WD 43559.**

Missouri Court of Appeals,
Western District.

Aug. 13, 1991.

Edward R. Spalty, Armstrong, Teasdale, Schlafly, Davis & Dicus, Kansas City, for plaintiff-appellant.

Eugene J. Feldhausen, Kansas City, for defendant-respondent.

Before TURNAGE, P.J., LOWENSTEIN, C.J., and BRECKENRIDGE, J.

BRECKENRIDGE, Judge.

Appellant Union Electric Company appeals from the trial court's order dismissing its petition seeking injunctive relief against Respondent Platte–Clay Electric Cooperative. Union Electric Company's petition was dismissed for lack of subject matter jurisdiction. Union Electric Company sought to declare its exclusive right to provide electric service to "new structures" built on certain property within its franchise area.

The pertinent facts are as follows:

Union Electric Company (hereinafter "Union Electric") is an investor-owned utility and electrical corporation within the meaning of Chapters 386 and 393, RSMo. 1986.[1] Union Electric is engaged in providing electric service within the City of Excelsior Springs, Missouri.

■ Platte–Clay Electric Cooperative, Inc. (hereinafter "Cooperative") is a rural electric cooperative existing under and subject to Chapter 394. Cooperative sells and distributes electric energy in rural areas of Clay County, Missouri. Pursuant to § 394.080(4), Cooperative is entitled to provide retail electric service in "rural areas" which, as defined by § 394.020(3), includes "any area ... not included within the boundaries of any city, town or village having a population in excess of fifteen hundred inhabitants...." Excelsior Springs is a city having at all times in question a population exceeding fifteen hundred (1,500). Excelsior Springs is not a "rural area" as defined by § 394.020(3).

The property in question, known as the Bartlett property, was annexed into the City of Excelsior Springs on April 3, 1989. Prior to that date, the Bartlett property was located in a rural area outside Excelsior Springs. At the time of annexation, the only existing structure on the property was a barn. The Bartlett property received electric service from the Cooperative through a metering device located adjacent to the barn. The barn was razed prior to July 17, 1989. From July 17, 1989 through November 15, 1989, no structure existed on the Bartlett property within the meaning of §§ 393.106 and 394.315.

Starting approximately November 23, 1989, Cooperative provided electric service to the Bartlett property in order to facilitate the construction of two new structures. The new structures did not exist on the property prior to April 3, 1989, the date the Bartlett property was annexed into Excelsior Springs, nor prior to August 13, 1986, the effective date of the amendments

---

1. All statutory references are to Missouri Revised Statutes, 1986, unless otherwise noted.

to §§ 393.106 and 394.315 [2]. Cooperative continues to supply electrical services to the Bartlett property.

Union Electric filed a petition with the Circuit Court of Clay County seeking injunctive relief against Cooperative. Union Electric sought the issuance of an injunction restraining the Cooperative from providing permanent electric service to the new structures on the property and a declaration that Cooperative's act of providing temporary electric service for the construction of the two new structures is an unlawful act, pursuant to §§ 393.106 and 394.315. Union Electric alleges, that under the 1986 amendments to these statutes, it is the sole entity able to lawfully supply electric energy to the Bartlett property.

The circuit court entered judgment dismissing the petition for lack of subject matter jurisdiction without articulating specific grounds for said holding. This timely appeal followed.

Appellant Union Electric contends the trial court erred in dismissing its petition for lack of subject matter jurisdiction because the petition seeks a judicial declaration that respondent has no lawful authority under §§ 394.080(4) [3] and 394.315 to supply electric service to new structures in a non-rural area and determination of that legal issue rests with the Clay County Circuit Court, not the Public Service Commission (hereinafter "PSC"), as the Cooperative contends.

The standard of review for this court when the trial court dismisses an action based solely on the pleadings is that this court must accept as true all facts pleaded and all reasonable inferences aris-

ing therefrom. *Detling v. Edelbrock*, 671 S.W.2d 265, 267 (Mo. banc 1984).

The question raised by Union Electric is whether, under §§ 393.106, 394.080 and 394.315, jurisdiction to decide this matter in the first instance rests with PSC or the circuit court. Pursuant to Article V, Section 14 of the Missouri Constitution and § 478.070 RSMo, the circuit courts "have original jurisdiction over all cases and matters, civil and criminal." Sections 527.010, 527.020 and 527.040 grant the circuit court jurisdiction over actions for declaratory judgment, including the power to construe statutes and determine the rights and status of the parties affected by the statutes. Chapter 526 vests the circuit court with the power to hear and determine actions requesting injunctive relief.

Cooperative's Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter contended that the trial court lacked subject matter jurisdiction based on the language of §§ 393.106 and 394.315. These statutes are generically called "flip-flop" statutes because the provisions are identical other than the appropriate referral to either an electrical corporation or a rural electric cooperative. In its motion, Cooperative correctly states the law that "[m]atters within the jurisdiction of the Public Service Commission must first be determined by it ... before the courts have jurisdiction to make judgments in the controversy." *DeMaranville v. Fee Fee Trunk Sewer, Inc.*, 573 S.W.2d 674 (Mo. App.1978). The question then is whether Cooperative's interpretation of the statutes to grant PSC jurisdiction is correct. A

---

**2.** These two statutes provide, respectively, for authorization of an electrical corporation, such as Union Electric, or a rural electric cooperative, such as Cooperative to supply electrical energy as delineated by the statutes.

**3.** Section 394.080(4) provides, in pertinent part:
A cooperative shall have power:
(4) [W]here a cooperative has been transmitting, distributing, selling, supplying or disposing of electric energy in a rural area which, by reason of increase in its population, its inclusion in a city, town or village, or by reason of any other circumstance ceases to be a rural area, such cooperative shall have the power to continue to transmit, distribute, sell,

supply or dispose of electric energy therein until such time as the municipality, or the holder of a franchise to furnish electric energy in such municipality, may purchase the physical property of such cooperative located within the boundaries of the municipality, pursuant to law, or until such time as the municipality may grant a franchise in the manner provided by law to a privately owned public utility to distribute electric power within the municipality and such privately owned public utility shall purchase the physical property of such cooperative located within the boundaries of the municipality.

review of the evolution of the applicable statutes and the cases interpreting said statutes proves beneficial.

The conflict between a utility operating in a municipality and a cooperative which had previously provided electric service to a formerly rural area, recently annexed into a municipality, was first addressed by the Missouri Supreme Court in *Missouri Public Service Co. v. Platte–Clay Elec. Coop.* 407 S.W.2d 883 (Mo.1966) ("MoPub I"). The court in *MoPub I* held § 394.-080(4) RSMo.1959 provided that the rural electric cooperative would be "grandfathered in" to provide electric service to those areas where it had been transmitting, distributing, selling, supplying or disposing of electric energy until the municipality or holder of the franchise to furnish energy in the municipality shall purchase the cooperative's physical property within the municipality.

Sections 393.106 and 394.315, adopted in 1982, as applied in *Missouri Public Service Company v. Platte–Clay Electric Cooperative, Inc.* 700 S.W.2d 838 (Mo. banc 1985) ("*MoPub IV*"), further limited the "grandfather" exception in § 394.080(4). In *MoPub IV*, the Supreme Court of Missouri stated that the new law changed the right of a cooperative to continue service to property after change from a rural to non-rural area. Such right of a cooperative was restricted to serving the same persons at the same "metering points" and "locations" as were being served by the cooperative on August 13, 1982, the effective date of original § 394.315. *MoPub IV*, 700 S.W.2d at 841–42.

Sections 393.106 and 394.315 were then amended in 1986 to their present form[4]. August 13, 1986 is now the effective date, rather than August 13, 1982. The statutes in their present form entitle a continuation of service by a rural electric cooperative to the same "structures" as were being served on the effective date, instead of the same "metering points" and "locations" as

previously required as a condition for the right of continuance.

Other appellate decisions follow the analysis adopted by the Supreme Court in *MoPub IV* to restrict the "grandfather" exception to persons at specific locations, now "structures", being served by the cooperative at the relevant effective date of the statutes. *See Union Elec. Co. v. Cuivre River Elec.*, 726 S.W.2d 415 (Mo. App.1987); *State of Missouri ex rel. Union Electric Company v. Public Service Commission of Missouri*, 765 S.W.2d 626 (Mo. App.1988).

In *Union Elec. Co. v. Cuivre River Elec., supra*, the Eastern District held that the question of whether a rural electric cooperative has the statutory right and authority to continue to provide service in a particular case depends upon whether or not the electrical suppliers have concomitant rights to supply the electric energy. The court stated, "under [394.315 RSMo. 1982] the [PSC] is vested with jurisdiction over electric cooperatives only in those limited circumstances where both the cooperative and an electric corporation have concomitant rights to serve the same area." *Id.* at 417.

After the court construed the statutes as giving the cooperative the legal authority to provide service in the particular circumstances of that case, the petition was dismissed. The only relief then available to the plaintiff was within the express jurisdiction of PSC with PSC to determine if the rural electric cooperative was to continue service or if a change of legal supplier was in the public interest. *Id.* at 418.

To determine, in the case at bar, if Union Electric and Cooperative have concomitant rights to supply these new structures on the Bartlett property with electric energy, this court turns to the applicable statute, § 394.315. The present provisions of § 394.315 are as follows:

1. As used in this section, the following terms mean:

4. Statutory provisions pertaining to the competing rights of an electric company and a rural electric cooperative to supply electric energy to a new structure in a formerly rural area, recent- ly annexed into a municipality, were amended in 1991. The effective date of the amendments is August 28, 1991, with an emergency clause applicable to certain sections.

(1) **"Person"** or **"persons"**, a natural person, cooperative or private corporation, association, firm, partnership, receiver, trustee, agency, or business trust;

(2) **"Structure"** or **"structures"**, an agricultural, residential, commercial, industrial or other building or a mechanical installation, machinery or apparatus at which retail electric energy is being delivered through a metering device which is located on or adjacent to the structure and connected to the lines of an electrical supplier. *Such terms* shall include any contiguous or adjacent additions to or expansions of a particular structure which was in existence on August 13, 1986, but *shall not include or be construed to apply to noncontiguous additions to or expansions of new structures upon which construction is commenced after August 13, 1986, or to confer any right on a rural electric cooperative to serve new structures on a particular tract of land because it was serving an existing structure on that tract prior to August 13, 1986.*

2. Every rural electric cooperative shall be entitled to continue to supply retail electric energy to persons at structures at which service is being provided on August 13, 1986. Notwithstanding any other provision of law to the contrary, no rural electric cooperative shall be permitted or required to supply retail electric energy to any person at a structure where said person is receiving, or has within the last sixty days received, retail electric energy from another supplier of electric energy. Provided, however, that the public service commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential, and the commission is hereby given jurisdiction over rural electric cooperatives to accomplish the purpose of this section. Except as provided herein, nothing in this section shall be construed as otherwise conferring upon the commission jurisdiction over the service, rates, financ-

ing, accounting or management of any such cooperative, and except as provided in this section, nothing contained herein shall affect the rights, privileges or duties of existing cooperatives pursuant to this chapter. (emphasis added)[5]

The definition of "structure" in the statute clearly draws a distinction as to that which is considered a "structure" and that which is considered a "new structure" and, thus, this court construes this language as even further limiting Cooperative's "grandfather rights". This court does not find Cooperative's interpretation of the language of 394.315.2 persuasive, because its interpretation is that Subsection 2 deals solely with "structures" as defined by the statute, and not "new structures".

Cooperative argues that since it has supplied electric energy to the Bartlett property prior to the annexation of this property, and further because it would have supplied service to the Bartlett property within the last sixty days, it is entitled to continue that service pursuant to §§ 394.080(4) and 394.315.2. Such reasoning, however, ignores the general rules of statutory construction and the plain, unambiguous meaning of § 394.315, when read in its entirety.

■ The primary rule of statutory construction is to ascertain the legislative intent of the statute from the language used, to give effect to that intent whenever possible, and to consider the words as defined by their plain and ordinary meaning, unless otherwise defined by statute. *Wolff Shoe Company v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). When the terms used in the statute are plain and clear to a person of ordinary intelligence, they are deemed clear and unambiguous. *Id.*

■ The meaning of the language of § 394.315.1 is plain and clear. The statute prohibits a rural electric cooperative, such as Cooperative, from providing electrical energy to new structures on a particular

**5.** Provisions of the "flip-flop" statute, § 393.106, mirror the language of § 394.315, but apply to electrical corporations such as Union Electric.

tract of land even though it was serving an existing structure on that tract prior to August 13, 1986. (That date being the date when § 394.315 came into effect, as amended). As stated previously, section 394.315 was adopted in 1982 and amended in 1986. A statute as amended should be construed on the theory that lawmakers intended the amendment to have some effect. *O'Neil v. State*, 662 S.W.2d 260, 262 (Mo. banc 1983); *Holt v. Burlington Northern R. Co.*, 685 S.W.2d 851, 857 (Mo.App.1984). Following the tenets of statutory construction, this court finds that the legislature intended these changes to have effect. These amendments clearly limit the "grandfather" exception of § 394.080. In its 1986 amendment to § 394.315, the legislature clearly sets forth that a rural electric cooperative, such as Cooperative, is not authorized to supply service to a new structure built on property which has ceased to be in a rural area, pursuant to § 394.080, after August 13, 1986.

■ Cooperative's argument that jurisdiction over this matter rests, in the first instance, with the PSC is based on its conclusion that it is irrelevant whether a rural electric cooperative is legally or illegally providing service to a formerly rural area recently annexed into a municipality. It claims the determining factor in the grant of jurisdiction over this matter to PSC is that the Bartlett property is already being supplied electric energy by Cooperative. The statutory authority cited by Cooperative is contained in Subsection 2 of §§ 393.-106 and 394.315 as follows:

Notwithstanding any other provision of law to the contrary, no electrical corporation or joint municipal utility commission [rural electric cooperative] shall be permitted or required to supply retail electric energy to any person at a structure where said person is receiving, or has within the last sixty days received, retail electric energy from another supplier of electric energy. Provided, however, that the commission may order otherwise after a finding that a change of suppliers is in the public interest.... (language of § 394.315 designated by brackets).

Cooperative further cites *Utilicorp United v. Platte–Clay Elec.*, 799 S.W.2d 108 (Mo. App.1990) (*"MoPub V"*) in support of this proposition. Cooperative's contention is without merit. It is illogical to conclude that the provision "notwithstanding any other provisions of law to the contrary" in §§ 393.106.2 and 394.315.2 means that the remaining provisions of that section should be construed without regard to the definition of "structure" contained in Subsection 1 of the same statute. This interpretation is particularly unreasonable when such definition is limited to use within the section.

If the above-quoted portion of Subsection 2 is read incorporating the definition of "structure" from Subsection 1, the jurisdiction of the PSC would be limited to determining whether a change of suppliers is in the public interest as between two electrical suppliers with concomitant rights. This interpretation is consistent with the holding in *Union Elec. Co. v. Cuivre River Elec.*, *supra*. To interpret the statute otherwise would encourage a rural electric cooperative or an electrical corporation to begin providing illegal service to new structures in order to come within exclusive jurisdiction of PSC.

The court's holding in *MoPub V* is factually distinguishable from the case at bar. In *MoPub V*, the rural electric cooperative and the owners of Big V Supermarket had agreed that Big V Supermarket would receive electricity from the rural electric cooperative rather than MoPub, who held the municipal franchise to provide service. Service was not yet being provided when MoPub filed its suit to enjoin such service. Therefore, any language concerning jurisdiction of PSC when electric service is already being supplied at the time suit was filed was not essential to the holding in *MoPub V*.

■ A judicial opinion should be read in the light of the facts pertinent to that particular case and it is improper to give permanent and controlling effect to casual statements outside the scope of the real inquiry of the case. *State v. Miles Laboratories*, 282 S.W.2d 564, 573 (Mo. banc 1955).

As such, this court does not follow the dictum set out in *MoPub V.* Instead this court, in applying the statutes to the facts as pleaded and accepted as true, finds no concomitant rights between the cooperative and the electric corporation and, thus, jurisdiction rests with the Circuit Court of Clay County and not the PSC.

This court finds that Union Electric's Request for Transfer to the Supreme Court Before Opinion, is rendered moot by the ruling of this court and, therefore, is denied.

The circuit court erred in dismissing Union Electric's petition. The judgment is reversed and remanded to the Circuit Court of Clay County for further proceedings on Union Electric's petition.

All concur.