**ST. JOSEPH LIGHT & POWER,**
A Corp., Appellant,

v.

**UNITED ELECTRIC COOPERATIVE,**
A Corporation, and Homestead Cooperative of Maryville, A Corporation, Respondents.

**No. WD 58140.**

Missouri Court of Appeals,
Western District.

Jan. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Gary W. Duffy, Jefferson City, for appellant.

William S. Lewis, Trenton, for respondent.

Before EDWIN H. SMITH, Presiding Judge, ELLIS, Judge and LAURA DENVIR STITH, Judge.

ELLIS, Judge.

Appellant St. Joseph Light & Power ("SJLP") appeals from a judgment entered in the Circuit Court of Nodaway County holding that Respondent United Electric Cooperative ("UEC") had the right to continue to provide permanent retail electric service to a housing project being constructed by Respondent Homestead Cooperative of Maryville ("HCM").

SJLP is a public utility holding an exclusive franchise to provide retail electric service within the City of Maryville, Missouri. UEC is a rural electric cooperative under Chapter 394, RSMo 1994, which provides retail electric service to rural areas in Nodaway County, Missouri.

HCM is a cooperative corporation that owns a tract of land on the edge of Maryville, Missouri. At all times relevant to this

action, HCM was in the process of building a housing facility on that property.

On December 18, 1997, HCM entered into a contract with UEC under which UEC would provide all of the retail electric power for the proposed housing facility. On March 9, 1998, HCM filed a petition with the City Council of Maryville, Missouri, requesting that this property be annexed into the city.

On April 27, 1998, site preparation and "dirt work" for the construction project began on the property. On May 7, 1998, UEC installed a pad-mounted transformer and meter on the property. After its installation, the transformer was energized and operational.

On June 8, 1998, the City of Maryville annexed the property. At that time, the concrete footings had been poured for the building and some preliminary plumbing had been installed. None of the floors or walls had been constructed, and there was no roof. In addition to the transformer and meter that had been installed on the property, the electrical contractor had placed three temporary construction power panels on the western side of the construction site to provide "single phase" electricity to power construction tools and provide temporary lighting. These temporary power panels were electrical breaker boxes and outlets mounted on a plywood board and placed on a wooden post driven into the ground. The temporary power panels were placed about 20 to 30 feet outside the perimeter of the concrete footings. Also, several electrical conduits (plastic pipes) had been buried in a trench running from the transformer to an area within the concrete footings. "Pull wires" had been placed inside the conduits. Pull wires are not used to transmit electricity and are used at a later date to pull the actual electrical conductors through the conduits.

On July 17, 1998, SJLP filed its "Petition for Permanent Injunction, Preliminary Injunction and Application for Temporary Restraining Order" in the Circuit Court of Nodaway County. SJLP sought to prevent UEC from providing permanent electrical service to the housing project. In its petition, SJLP claimed to be the only lawful supplier of electricity within the City of Maryville and asked the court to restrain UEC from providing electricity to the housing project.

The case was tried to the court on August 25, 1999. On December 13, 1999, the trial judge entered his "Findings of Fact, Conclusions of Law, and Judgment." The trial judge found that, as of the date of annexation, UEC had installed all of the permanent facilities necessary for it to provide electrical service to the housing project and that any remaining electrical equipment to power the buildings was to be installed by the electrical contractor. The trial court also found that UEC was providing electricity to a "structure" on the date of annexation because electrical construction equipment plugged into the temporary power panels with extension cords had been used within the perimeter of the building's footings. Based on these findings, the court held that UEC was entitled to continue providing electricity to the structure under §§ 394.080.1 and 394.315.[1]

■ On appeal, SJLP argues that the trial court erred in finding that UEC had the right to provide permanent retail electric service to the housing project. When reviewing a court-tried case, this Court will affirm the judgment of the trial court unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Butler Supply, Inc. v. Coon's Creek, Inc.,* 999 S.W.2d 748, 749 (Mo.App. W.D.1999).

"Pursuant to section 394.080.1(4), a rural electric cooperative has the authority to sell electricity to its members in rural areas." *Farmers' Elec. Co-op., Inc. v. Missouri Dept. of Corrections,* 977 S.W.2d 266, 269 (Mo. banc 1998). "Rural areas" include any area "not included within the boundaries of any city, town, or village having a population in excess of fifteen hundred inhabitants." § 394.020(3). Prior to its annexation into the City of Maryville, the property owned by HCM was within a rural area under the statutory definition, and UEC could properly provide electric services to it. However, because the City of Maryville had a population in excess of 1,500 inhabitants, once the property owned by HCM was annexed into the city, the property ceased to be located in a "rural area" as defined by statute. *Union Elec. Co. v. Platte Clay Elec. Co-op., Inc.,* 814 S.W.2d 643, 644 (Mo.App. W.D.1991).

Where a rural electric cooperative has already started providing permanent electric service to a property which is annexed by a city, Section 394.080.1(4) contains a "grandfather provision" which allows the cooperative to continue to provide electricity to that property after its annexation. "Under this section, when a rural area served by a cooperative is annexed into a city, the cooperative has the authority to continue selling electricity to its members in the formerly rural area." *Farmers' Elec. Co-op., Inc.,* 977 S.W.2d at 270.

Section 394.315 serves to limit a rural cooperative's grandfather rights under § 394.080. *Id.* Section 394.315.2 provides that "[o]nce a rural electric cooperative ... lawfully commences supplying retail electric energy to a structure through per-

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

manent service facilities, it shall have the right to continue serving such structure, and other suppliers of electrical energy shall not have the right to provide service to the structure ..."[2] "Section 394.315.1(2) states that '[n]othing in this section shall be construed to confer any right on a rural electric cooperative to serve new structures on a particular tract of land because it was serving an existing structure on that tract.'" *Farmers' Elec. Co-op., Inc.*, 977 S.W.2d at 270. Accordingly, once the land at issue is annexed into a city with a population over 1,500, the rural electric cooperative no longer has the right to provide electric service to any new structures constructed on the land after the date of annexation. *Id.* at 271. Therefore, the relevant inquiry in determining whether UEC had a right to provide permanent retail electric service to the housing project is whether UEC had commenced supplying retail electric energy to that "structure" through "permanent service facilities" prior to the date of annexation. On appeal, SJLP challenges the trial court's findings on both of these issues.

Section 394.315.1(2) defines a "structure" as:

> an agricultural, residential, commercial, industrial or other building or a mechanical installation, machinery or apparatus at which retail electric energy is being delivered through a metering device which is located on or adjacent to the structure and connected to the lines of an electrical supplier. Such terms shall include any contiguous or adjacent additions to or expansions of a particular structure. Nothing in this section shall be construed to confer any right on a rural electric cooperative to serve new

structures on a particular tract of land because it was serving an existing structure on that tract.

Under this definition, a structure can either be (1) an agricultural, residential, commercial, industrial or other building; or (2) a mechanical installation, machinery or apparatus at which retail electric energy is being delivered through a metering device which is located on or adjacent to the structure.

■ At the time the property was annexed, no "building" was present on the property. Missouri case law has defined a "building" as a "constructed edifice designed to stand more or less permanently covering a space of land usu. covered by a roof and more or less completely enclosed by walls ...." *Skinner v. Henderson*, 556 S.W.2d 730, 733 (Mo.App. E.D.1977) (quoting Webster's Third New International Dictionary 292 (1967)); *See also State v. Scilagyi*, 579 S.W.2d 814, 817 (Mo.App. W.D.1979); *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 363 (Mo.App. W.D.1991). The concrete footers and plumbing present on the construction site on the date of annexation most certainly did not constitute a building.

■ Accordingly, we must consider whether UEC had commenced supplying retail electric energy to a structure in the form of a "mechanical installation, machinery or apparatus" on the property through "permanent service facilities" prior to the date of annexation. Section 394.315.1(1) defines "permanent service" as:

> electrical service provided through facilities which have been permanently installed on a structure and which are

---

**2.** Likewise § 393.106.2 provides: "Once an electrical corporation or joint municipal utility commission, or its predecessor in interest, lawfully commences supplying retail electric energy to a structure through permanent ser- vice facilities, it shall have the right to continue serving such structure, and other suppliers of electrical energy shall not have the right to provide service to the structure ..."

designed to provide electric service for the structure's anticipated needs for the indefinite future, as contrasted with facilities installed temporarily to provide electrical service during construction. Service provided temporarily shall be at the risk of the electrical supplier and shall not be determinative of the rights of the provider or recipient of permanent service.

■ In the case at bar, the trial court found that UEC had met the requirements of § 394.315 by supplying power to construction tools on the work site through extension cords plugged into temporary electrical panels. In essence, the trial court held that providing power to a hand-held drill or electric saw for temporary use on a construction site constituted providing electric power to a "structure" on the property. Such a conclusion is contrary to the language of the statute and the intent of the legislature.

Section 394.315.1(1) provides that permanent service be provided through facilities permanently installed on the structure. The facilities at the work site were not meant to permanently power any mechanical installation, apparatus or machinery present on the work site prior to the date of annexation. Electrical power was not "permanently installed on" any apparatus or machinery present at the site. Indeed, on the date of annexation, the power for construction tools was being provided through extension cords plugged into temporary electrical panels that were removed in April 1999. Furthermore, the evidence does not reflect that any apparatus or piece of machinery utilized on the construction site prior to the date of annexation was meant to remain there on more than a temporary basis. The construction equipment utilized on the property prior to the date of annexation simply cannot be deemed to have been a structure.

The language of § 394.315 clearly reflects the legislature's intent that equipment being utilized on a temporary basis during the construction process not be considered a "structure." Section 394.315 provides that facilities installed temporarily to provided electrical service during construction do not constitute permanent service facilities. Section 394.315 further states that a rural electrical cooperative providing temporary service during construction does so at its own risk and that providing such service does not establish the electrical supplier's right to provide permanent service. In so doing, the statute reflects the Legislature's intent to differentiate providing electric service to power construction equipment from providing power to a mechanical installation, machinery or apparatus meant to be a permanent fixture on the property.

The electrical panels and extension cords that were utilized to power any construction machinery on the site were clearly temporary facilities. While the transformer and meter installed by UEC on the property was capable of providing service to a structure on the property, at the time of the annexation, temporary facilities were required to provide electricity to the construction equipment.

Moreover, the grandfather provisions of § 394.315 provide that a rural electric cooperative may continue to provide service to structures it was serving prior to annexation, but that the cooperative does not have the right to provide electricity to any new structures built after the date of annexation. *Farmers' Elec. Co-op., Inc.*, 977 S.W.2d at 271. Even if the construction equipment could properly have been found to be a "structure" or "structures" by the trial court, the new housing project was not a contiguous or adjacent addition to or an expansion of that "structure." § 394.315.1(2). In fact, the construction

equipment referenced by the trial court and the electrical panels set up to power it are no longer present on the site. Accordingly, if that equipment were properly deemed to be "structures" under the statute, UEC only had the right to continue serving those "structures" and does not have any right to supply power to the newly constructed housing project which is in no way attached to that machinery.

In arguing that it should be allowed to continue to supply electric service to the housing project, Respondents rely in large part on *Empire Dist. Elec. Co. v. Southwest Elec. Co-op.*, 863 S.W.2d 892 (Mo. App. S.D.1993), based on factual similarities between that case and the case at bar. Respondents contend that we should reach a similar result because *Empire* upheld the rights of a rural electric cooperative to provide electric service to a building that was not quite completed and was only being supplied single-phase service at the time of annexation. *Id.* at 893. However, *Empire* was based entirely on a determination by the Southern District of this Court that § 394.315 did not limit the rural electric cooperative's authority to continue serving customers under the provisions of § 394.080. *Id.* at 896. The *Empire* court ruled that the trial court erred in limiting the cooperative's "grandfather" rights under § 394.080 by imposing the requirement set forth in § 394.315 that the cooperative show that it was providing electricity to a structure that existed at the time of annexation. *Id.* It reasoned that the trial court's finding that the building under construction did not constitute a "structure" at the time of annexation was not a relevant consideration because under § 394.080 the cooperative was not required to have supplied service to a "structure" at the time of annexation. *Id.* at 897. *Empire* held that § 394.315 did not serve to limit the grandfather provisions of § ·394.080 and, accordingly, that the only consider-

ation was whether the cooperative was supplying electricity to the customer on the property. *Id.* at 897.

In *Farmers' Elec. Co-op., Inc.*, 977 S.W.2d 266, the Missouri Supreme Court, noting only factual distinctions, did not expressly overrule *Empire*. But the court did so implicitly when it specifically held that the provisions of § 394.315 do serve to limit a cooperative's grandfather rights under § 394.080, relying on our prior decisions in *Union Electric Company v. Platte–Clay Electric Cooperative, Inc.*, 814 S.W.2d 643 (Mo.App. W.D.1991) and *Utilicorp United, Inc. v. Platte–Clay Electric Cooperative, Inc.*, 799 S.W.2d 108 (Mo. App. W.D.1990). In *Farmers'*, the Court stated:

> Farmers' contends that section 394.080 is the only controlling statute in this case, and that under that statute, it has the authority to provide electric service to Crossroads, a new structure on the annexed land. We disagree. To shed light on the proper interpretation of section 394.080, it must be read in conjunction with other statutes involving related subject matter.

> \* \* \*

> There are several statutes that pertain to the powers and limitations of municipally owned electric utilities and rural electric cooperatives to provide electric service. Section 394.315.1(2) states that "[n]othing in this section shall be construed to confer any right on a rural electric cooperative to serve new structures on a particular tract of land because it was serving an existing structure on that tract." Under this section, as the plain language indicates, a rural cooperative may not serve "new structures" on a particular tract of land merely because it was serving an existing structure on that tract of land. In

*Union Electric Company v. Platte–Clay Electric Cooperative, Inc.,* 814 S.W.2d 643, 647 (Mo.App.1991), the court construed this statute to be a limitation on a cooperative's grandfather rights under section 394.080 to continue serving its members' structures on land annexed into a city. In that case, the court found that "[t]he meaning of the language of section 394.315.1 is plain and clear. The statute prohibits a rural electric cooperative ... from providing electrical energy to new structures on a particular tract of land [which has ceased to be in a rural area] even though it was serving an existing structure on that tract...." *Id.* at 647–48; *see also Utilicorp United Inc. v. Platte–Clay Elec. Coop., Inc.,* 799 S.W.2d 108, 110 (Mo.App.1990). In this case, Farmers' may not provide service to Crossroads merely because it has the authority under section 394.080.1(4) to continue providing service to the structures it was serving before the land was annexed.

Moreover, Farmers' is not entitled to provide electric service to Crossroads pursuant to section 394.315.2. That section, in pertinent part, provides:

> Once a rural electric cooperative, or its predecessor in interest, lawfully commences supplying retail electric energy to a structure through permanent service facilities, it shall have the right to continue serving such structure, and other suppliers of electrical energy shall not have the right to provide service to the structure except as might be otherwise permitted in the context of municipal annexation, pursuant to section 386.800 ... and section 394.080 ...

Because Farmers' never provided electric service to Crossroads prior to annexation, section 394.315.2 does not provide a basis for Farmers' to provide electric service to Crossroads.

*Id.* at 270–71 (footnotes omitted). From this it can readily be seen that our Supreme Court expressly rejected the legal conclusions upon which the Southern District based its decision in *Empire.* Accordingly, we decline UEC's invitation to follow *Empire* in this case.

In sum, the trial court erred in finding that UEC had provided electric service to a "structure" through "permanent service facilities" on the date of annexation. The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.