**NORTH STAR APARTMENTS, John R. Hutcherson, Plaintiffs-Respondents,**

v.

**GOPPERT BANK & TRUST COMPANY, William C. Partin, Trustee, Defendants-Appellants,**

**John A. Key and Josephine Key, Defendants-Respondents.**

No. WD 33988.

Missouri Court of Appeals, Western District.

May 10, 1983.

As Modified Aug. 2, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 31, 1983.

Application to Transfer Denied Sept. 20, 1983.

As Modified Sept. 27, 1983.

Thomas Sullivan, Kansas City, for defendants-appellants.

Roger Guy Burnett, Liberty, for plaintiffs-respondents.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Appellant Goppert Bank & Trust Company, (Goppert Bank), appeals from a final judgment of the Circuit Court of Clay County, which enjoined it from conducting a foreclosure sale of respondent's, North Star Apartments (North Star) property by trustee under a deed of trust.

On March 29, 1973, the North Star Apartments partnership as maker delivered a promissory note payable to John and Josephine Key (the Keys), for the purchase of certain real estate. The note provided that the principal amount of $470,000.00 was to be paid to the payees, with interest at 8 per cent, and payments were to be made in installments of $3,650.00 a month, due on the 5th day of each month. The note also provided that there would be no personal obligation on the partners to pay any *deficiency on* the note, but that collection would be made only against the property securing the note. The same day, a deed of trust was drawn securing the note in favor of the payees. The note was endorsed in blank by the Keys and was assigned to Goppert Bank, who has had possession of the note for quite some period of time. Goppert Bank was in possession of the North Star partnership note at the time this suit was filed, and at the time of the first hearing in this matter. The Keys owed a separate note to Goppert Bank and had assigned the North Star Apartments' partnership note and deed of trust to Goppert as security for the payment of their note.

The real estate involved in this case consists of a four building apartment complex, located in Gladstone, Clay County, Missouri. Respondent North Star Apartments, that acquired the property from the Keys, is a limited partnership and respondent John R. Hutcherson, is the general partner. North Star began to make payments on the note secured by the deed of trust soon after acquiring the property. These payments were made by checks drawn on a partnership account and signed by Mr. Hutcherson. The payments were made to the Goppert Bank, holder of the note. These payments were due on the 5th of each month. Up until the time that the October 5, 1981 installment came due, North Star had made all of its monthly payments, although many of them were made as late as the 16th of the month.

Payment on the October 5, 1981 installment was late. A check drawn on the Metro North State Bank, against the North Star Partnership account, signed by Mr. Hutcherson and dated October 7, 1981 was received by Goppert Bank. This check, in the amount of $3,650.00 was twice sent through Metro North State Bank and returned for insufficient funds. At this point Goppert Bank determined that North Star was in default and declared the entire amount of the note to be due and payable in accordance with an express acceleration clause in the note. Notice of acceleration was given to both North Star Apartments and Mr. Hutcherson, and when payment was not forthcoming, foreclosure proceedings were instituted by Goppert Bank.

In addition to the bad check, Goppert Bank was advised in early October, 1981, that North Star's insurance on the mortgaged property was being cancelled effective October 25, 1981, due to nonpayment of premiums. Following receipt of this information regarding the insurance, Goppert Bank discussed the problem with Mr. Key who then personally obtained insurance on the apartment complex.

The foreclosure was set for January 29, 1982, and on that same day, North Star and Hutcherson filed a petition for a temporary restraining order and permanent injunction, seeking to enjoin the sale of the property under the trustee's foreclosure of the deed of trust held by Goppert Bank.

A hearing was held January 29, 1982, in Clay County Circuit Court. The Circuit Judge granted the temporary restraining order. The sale was restrained upon the posting of a nominal bond ($1500). At the time of the hearing it was brought out in evidence that the 1980 and 1981 real estate taxes on the North Star property were in default. The amount of tax owed by North Star, with interest and penalties, was estimated at approximately $22,000.00.

During February and March several hearings were held and on March 24, 1982, North Star and Hutcherson filed their First Amended Petition for a temporary restraining order and permanent injunction, Count I, and a Count II was added, alleging a controversy existed between the Keys and Goppert Bank as to the disposition of the proceeds of the note. The Court on March 31, 1982 entered its order granting a permanent injunction.[1] Appellants, Goppert Bank and Trustee, William C. Partin filed their separate answer and counterclaim for an accounting and restitution alleging North Star and Hutcherson were not entitled to relief by way of a restraining order or injunction, and that such relief was improperly awarded. Goppert and Partin also contended that in the event Goppert Bank sustained damages by reason of being denied its right to foreclosure, and having been deprived of its security, North Star and Hutcherson should be required to pay compensatory damages.

The trial court determined that the restraining order and injunction were properly granted, and entered a final decree on June 16, 1982, from which this appeal is taken. The decree found no default on the note or the deed of trust, denied Goppert's request for accounting and ordered the clerk to pay amounts paid into court by North Star (note payments) paid to Goppert and credited to the Keys' account.

Appellants, Goppert and Partin raise three points on appeal. The first point contends that the court erred in enjoining foreclosure because the facts conclusively established that the note secured by the deed of trust was in default in that an installment had not been made, and thus the holder of the note and deed of trust was lawfully entitled to foreclose the deed of trust and avail itself of the security. Appellant's second point contends error in enjoining foreclosure because the owners of the property were in default of a condition and covenant of the deed of trust which required it to pay when due or within the time required by law all taxes and assessments levied or charged upon the property. Their final point contends error in enjoining foreclosure because North Star breached a

1. The Court ordered North Star to make the note payments into the registry of the Court.

covenant of the deed of trust which required it to keep the secured property satisfactorily insured with the policies constantly assigned and delivered to the Goppert Bank. Goppert's claim for restitution and accounting was not raised on appeal.

The judgment of the trial court is reversed and remanded with directions.

Appellant Goppert Bank is clearly the *holder* of the note at issue in this case and thus is entitled to the rights of a holder. Goppert Bank has had possession of the promissory note which was endorsed in blank by the Keys, since 1973, and was in possession at the time of the respondent's default. As appellant correctly notes, § 400.1–201(20) RSMo.1979 [2] (Uniform Commercial Code) defines a "holder" as follows:

> " 'Holder' means a *person* who is *in possession* of a *document of title* or an *instrument* or an investment security drawn, issued or *endorsed* to him or to his order or to bearer or *in blank*." (Emphasis added.)

The promissory note held by Goppert Bank had an express clause providing for acceleration of payment upon default. This clause clearly stated:

> "If default is made in the payment of *any installment when due,* then all the remaining installments shall become due and payable at once and bear interest at the highest legal contract rate until paid." (Emphasis added.)

■ The October 5, 1982 installment was not paid when due and the respondents therefore were in default. At that point the holder of the note, Goppert Bank, was entitled to request payment in full of all remaining installments. In *Miller v. Jones,* 635 S.W.2d 360, 363 (Mo.App.1982), the court stated that "[a]n acceleration clause is solely for the benefit of the holder of the note and confers upon him an option to treat the entire debt. as due." *See also, Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* 363 S.W.2d 575, 578 (Mo. 1962).

■ Presentation of a worthless check can not be considered "payment" of an installment. The check received by Goppert Bank, dated October 7, 1981, in the amount of $3,650.00, was presented twice for payment and was returned twice for insufficient funds. Business records of Metro North State Bank. which were received in evidence demonstrate that notice of insufficient funds was mailed to North Star Apartments and John R. Hutcherson. A copy of the "bounced" check signed by Mr. Hutcherson as General Partner of North Star Apartments was also admitted into evidence. Mr. Hutcherson denied ever having received notice of the insufficient funds check, despite evidence from his bank to the contrary.

■ On November 3, 1981 the attorney for the Keys mailed a letter to Mr. Hutcherson informing him that the North Star Partnership was in default under the terms of the note and deed of trust. This letter, which was introduced in evidence, also noted the partnership's failure to maintain insurance and pay the taxes on the property as required by the deed of trust. Soon after the above letter was sent, a check was received by Goppert Bank, drawn on the North Star Apartments' account and signed by Mr. Hutcherson, dated November 10, 1981 for the amount of $3,650.00. Unlike the October check which noted in the memo space that it was for the October payment, this check did not specify which month the payment was to be applied to. On November 13, 1981, the Goppert Bank returned the check uncashed to Mr. Hutcherson along with a letter informing him that the Keys had advised them of North Star Apartments default and that they had declared the entire balance of the note due and payable at once. It is unclear whether North Star intended this November 10th check be accepted as their November installment or as back payment for their October installment. In either case, the respondents at that point owed a total of $7,300.00, or two payments, if they intended

2. All statutory references are to RSMo.1978, unless otherwise indicated.

to bring their account up-to-date. The tender for only one installment then due was insufficient—to have been effective the full amount due must be tendered. *Lowry v. Northwestern Savings & Loan Association,* 542 S.W.2d 546, 548 (Mo.App.1976). Evidence was admitted in court, in the form of bank records, that confirmed the fact that at no time during the month of November did the North Star bank account have sufficient funds in which to pay both of the past due installments. Tender combines readiness, willingness and *ability* to pay. *Lowry, supra,* 548–549.

▆▆▆ North Star argues the appellants should have accepted the proffered November check as an installment, and that by the fact that appellants had accepted late payments in the past, they were then estopped from accelerating payment of the entire note. The trial court apparently agreed with this line of reasoning and stated that the November payment should have been accepted when tendered, and that Goppert Bank could have applied it to the account as the October 5th payment. This reasoning is difficult to follow because no matter which month the payment would be applied to, the respondents would still owe for one month's installment. *Lowry, supra,* 548. The order and decree also fails to adequately explain why the appellant should be required to accept any payments following a clear and blatant default in an installment. The court's explanation was that since on some occasions, late monthly installments payments had been made on the note, the holder, Goppert Bank, should have made written demand for prompt payment of each installment. As the appellants correctly state in their brief, there is nothing in the covenants contained in the instruments, nor in law or equity, that imposes any such requirement on the holder of the note. To require holders of a note to expand their duties beyond those expressly deliniated in the terms of the note is to impose upon them an onerous task. This note should have been paid according to its terms, and when a worthless check was tendered as payment for an installment, there was a default and the whole note was due and

payable. On the date the note was declared in default and when notice of foreclosure sent, North Star had been late in payment and was one payment short. Invocation of the acceleration provision was proper in this case. *Lowry, supra,* 549. The trial court erred in enjoining foreclosure of the deed of trust and preventing the holder from availing itself of its security. Appellant's first point is ruled in its favor.

Appellant's second point contends trial court error in enjoining foreclosure because the owners of the property were in default of a condition and covenant of the deed of trust which required them to pay when due or within the time required by law all taxes and assessments levied or charged upon the property.

Goppert Bank, was the holder of the promissory note dated March 29, 1973, and was entitled to all the benefits of the deed of trust which secured the payment of the note. The deed of trust contained an express covenant that the party of the first part agree "to *pay when due* or *within the time required by law,* all taxes and assessments, general or special, hereafter levied or charged thereon or therefore . . ." (Emphasis added.)

Respondent Hutcherson admitted in court that the 1980 and 1981 taxes on the apartment were delinquent and unpaid. As mentioned earlier, the total amount due on the taxes for both 1980 and 1981 was estimated at between $20,000.00 and $22,000.00.

▆▆▆ The trial court excused the respondents' breach of this express covenant, stating that the respondents had paid the real estate taxes *after* they fell due, "but within two years after they fell due." The court accepted the respondent's argument that since the Clay County Collector made a practice of not compiling a delinquent real estate tax list and not conducting foreclosure sales until two years after the real estate taxes fell due, taxes paid within two years of being due were paid "within the time required by law." The plain meaning of the covenant in the deed of trust is clear, and courts are not empowered to make con-

tracts for the parties before the court or to insert provisions into existing contracts via judicial interpretation. *See, Brackett v. Easton Boot and Shoe Company,* 388 S.W.2d 842 (Mo.1965). Missouri law is also clear as to when real estate taxes become due and when they are delinquent. Article X, Section 3 of the Constitution of Missouri states:

"All taxes shall be levied and collected by general laws and shall be *payable during the fiscal or calendar year in which the property is assessed.*" (Emphasis added.)

As noted by the appellants, the applicable statutes are even more specific and restrictive as to when taxes become due and payable, and would apparently forbid the practice of the Clay County Collector in allowing taxes to remain unpaid for two years after they fall due.

Section 141.040 RSMo. states as follows: "*Duty of collector to enforce payment of back taxes*—suit commenced—summons—publication—default judgment (first class counties). If, on the *first day of January of any year,* any of said lands or town lots contained in said back tax book or recorded list of delinquent land or lots in the collector's office remain unredeemed, *it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot,* by suit in a court of competent jurisdiction in the county where the real estate is situated, which said court shall have jurisdiction, without regard to the amount sued on, *to enforce the lien of the state or such counties ....*" (Emphasis added.)

The 1980 taxes were due and payable during the year 1980 and should have been paid by the respondents no later than December 31, 1980. The 1981 general taxes were due and payable in 1981 and should have been paid no later than December 31, 1981. The Goppert Bank was entitled to proceed to foreclosure because the respondents were in violation of the covenant of the deed of trust requiring timely payment of taxes, and thus were jeopardizing the entire estate. Appellant's second point is ruled in its favor.

Appellant's final point contends that the trial court erred in enjoining foreclosure because North Star had breached a covenant of the deed of trust which required it to keep the secured property satisfactorily insured, with the policies constantly assigned and delivered to Goppert Bank.

The particular covenant in the deed of trust reads as follows and requires that the owners of the property:

"... [k]eep the improvements upon said land constantly and satisfactorily insured until said note be paid, for the sum of at least _____ DOLLARS, and the policy or policies thereof constantly assigned or pledged and delivered to Goppert Bank & Trust Company, for further securing the payment of said note, with power to demand, receive and collect any and all monies becoming payable thereunder and the same to applying toward the payment of said note ..."

Evidence was introduced which established that North Star had allowed the insurance on the property to lapse due to nonpayment of the premiums. Appellant John Key had to personally pay the premiums to have the insurance reinstated. In the original order granting the permanent injunction, dated March 31, 1982, the judge excused the breach of the insurance covenant stating:

"That although the deed of trust calls for the carrying of casualty insurance on the real estate, it does not specify any amount of such insurance to be carried and the space providing for such casualty insurance is blank. The casualty insurance provision therefore, in said deed of trust is a nullity and of no force and effect."

The appellants argue that the fact that the amount of insurance to be carried was left blank in the deed of trust is of no consequence as the intent of the parties should govern and would imply an amount at least as much as the balance due on the note. The intent of the parties as to the amount of coverage required can not be implied from a blank space left in the document. This issue, however, is not disposi-

tive of the instant case and will not be ruled on here since appellant's first two points establish default on the note and the breach of an express covenant in the deed of trust, and call for a reversal of the trial court's judgment.

The judgment of the trial court dated June 16, 1982 is reversed. The Order granting permanent injunction of March 31, 1982 is reversed and the court ordered to set aside, vacate and dissolve the injunction. Those portions of the judgment pertaining to note payments made into court and interest received thereon, and disposition of the $1500.00 bond and interest are reversed and remanded to the trial court for further proceedings to determine proper disposition, and at such proceedings the court is to determine, if applicable, all matters pertaining to damages, costs, restitution or any accounting arising out of this cause of action. Costs assessed against respondents.