FARMERS' ELECTRIC COOPERATIVE, INC., Appellant,

v.

MISSOURI DEPARTMENT OF COR- RECTIONS and City of Camer- on, Missouri, Respondents.

No. 80704.

Supreme Court of Missouri, En Banc.

Oct. 20, 1998.

Patrick A. Baumhoer, Victor S. Scott, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., John R. Munich, Deputy Atty. Gen., Mark G. Anderson, Jefferson City, for Respondents Mo. Dept. of Corrections.

Mark G. Anderson, Gary W. Duffy, Jefferson City, for respondent City of Cameron, Mo.

PER CURIAM.[1]

This is an appeal from the trial court's grant of respondents' motions for summary judgment, judgment in favor of the department of corrections on appellant's breach of contract claim, and judgment in favor of respondents on their counterclaim for a declaratory judgment. Appellant raises two points on appeal: First, appellant claims the trial court erred in ruling that it could not serve the Crossroads Correctional Center and that the September 10, 1986, contract between appellant and the department of corrections was illegal. Second, appellant contends the trial court erred in entering judgment in favor of the department of corrections on appellant's petition for breach of contract.

### Facts

Farmers' Electric Cooperative, Inc., ("Farmers'") is a rural electric cooperative organization, engaged in the business of providing and selling electric power and energy at retail to its members. The city of Cameron, Missouri, ("city") provides electric service to its customers in the city. On September 10, 1986, Farmers' and the department of corrections ("department") entered into a twenty-year contract for the purchase and sale of all the electricity that the department may need upon a tract of land located in DeKalb County, Missouri ("contract"). The land in the contract is described as follows:

> First Tract—Southeast quarter (S.E.1/4) of Section II, Township 57, Range 30, De-Kalb County, Missouri.

---

1. The appeal in this case was originally decided by the Court of Appeals, Western District, in an opinion written by the Honorable Victor C. How- ard, Judge. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

Second Tract—All of the west 1109 feet of southwest quarter (S.W.1/4) of Section 12, Township 57, Range 30, DeKalb County, Missouri.

Pursuant to the contract, the department was accepted as a member of Farmers', and the department was required to purchase all of its electrical power for the tracts listed in the contract from Farmers'. At the time the department contracted with. Farmers', the land described in the contract was not within the city boundaries of Cameron, Missouri, nor was the land within any city, town or village having a population in excess of 1,500 inhabitants.

From 1986 to 1988, the department built the Western Missouri Correctional Center (WMCC) near the city boundaries, on part of the tract of land described in the contract. In 1988, the department commenced operation of the WMCC. On September 22, 1988, Farmers' began supplying retail electric energy to the WMCC.

In 1994, the department signed a petition of annexation, requesting voluntary annexation of the land in the contract. The department requested annexation in exchange for a financial contribution from the city of a part of the cost of constructing a wastewater pretreatment lagoon on the land described in the contract. The city agreed to annexation because it increased the city's population, which in turn caused an increase in the motor fuel tax revenues received by the city from the department of revenue.

In February 1994, the state of Missouri and the DeKalb County commission signed a petition for annexation and the DeKalb County commission ordered and approved the petition. A notice of public hearing regarding the proposed annexation was thereafter issued. On April 5, 1994, the city passed an ordinance annexing certain adjacent territory into the city, including the tract of land described in the contract. When the land was annexed, the city had a population in excess of 1,500 inhabitants, so that the annexed land ceased to be located in a rural area. On or about April 14, 1995, the city and the department agreed that if the

department would select the city as the site for the construction of the new, 1200 bed, level four correctional facility, the city would pave Pence Road from just beyond the entry road to the WMCC to the proposed entry road to the new correctional facility and water and wastewater service for the new facility would be purchased and sold under the existing contract between the city and the department for the purchase and sale of water and wastewater service, with the addition of a surcharge for water or wastewater service above 403,200 gallons per day.

Prior to April 21, 1995, the department decided to build the new facility on part of the land described in the contract. On April 24, 1995, the division of design and construction, on behalf of the department, requested that Farmers' and the city provide it with information and rates for providing electrical service to the new facility. Both Farmers' and the city responded to the department's request. On May 16, 1995, the division of design and construction, on behalf of the department, notified Farmers' and the city that it would obtain electric service from the city for the new facility to be built on part of the land described in the contract.

The correctional facility is named Crossroads Correctional Center ("Crossroads"). Crossroads was constructed on part of the land described in the contract. Electricity for Crossroads' construction was provided by the city. Farmers' has never provided electricity to Crossroads.

Farmers' filed an action against the department, alleging breach of the 1986 contract. The department filed an answer and a counterclaim for declaratory judgment. The department and the city filed a joint first amended counterclaim for declaratory judgment, requesting that the court enter an order declaring that the facility being constructed on the tract of land described in the 1986 contract was a "new structure" within the meaning of section 394.315.1(2).[2] They further requested that the circuit court's order declare that sections 386.800.2 and 394.315.1 made the 1986 contract illegal and void. Farmers' filed its answer to the joint

---

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

first amended counterclaim on November 30, 1995.

After a stipulation of facts and motions for summary judgment were filed, the trial court entered its order, finding that Crossroads was a new structure within the meaning of section 394.315.1(2), and only the city could lawfully supply electricity to Crossroads under the statute. The trial court also concluded that Farmers' could not provide electricity to Crossroads under section 394.315.2. The trial court further found that the 1986 contract was illegal as it applied to Crossroads. The trial court denied Farmers' motion for summary judgment, granted the department's and the city's motions for summary judgment, and entered judgment in favor of the department on Farmers' breach of contract claim and in favor of the department and the city on their counterclaim for declaratory judgment. This appeal followed.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993); *Rule 74.04(c)*. Because the trial court's judgment is founded on the record submitted and the law, this Court need not defer to the trial court's order granting summary judgment. *ITT*, 854 S.W.2d at 376. Appellate review is essentially de novo, and the criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996).

### Point I

Farmers' first point on appeal is that the trial court erred in ruling that it could not serve Crossroads and that the September 10, 1986, contract between Farmers' and the department was illegal. Farmers' contends that even if Crossroads is a new structure in accordance with section 394.315.1(2), Farmers' has the authority to continue selling electricity to its member, the department, in a formerly rural area pursuant to section 394.080.1(4), and, therefore, the contract is not illegal.

We first address the issue of whether Farmers' is legally entitled to serve the electrical needs of the department in the formerly rural area, which ceased to be rural because of annexation into the city. Section 394.080 establishes the powers of a rural electric cooperative. Pursuant to section 394.080.1(4), a rural electric cooperative has the authority to sell electricity to its members in rural areas.[3] The relevant portion of section 394.080 provides as follows:

1. A cooperative shall have power: ...

(4) Except as provided in section 386.800, RSMo, to generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten percent of the number of its members; provided, however, that where a cooperative has been transmitting, distributing, selling, supplying or disposing of electric energy in a rural area which, by reason of increase in its population, its inclusion in a city, town or village, or by reason of any other circumstance ceases to be a rural area, such cooperative shall have the power to continue to transmit, distribute, sell, supply or dispose of electric energy therein until such time as the municipality, or the holder of a franchise to furnish electric energy in such municipality, may purchase the physical property of such cooperative located within the boundaries of the municipality, pursuant to law, or until such time as the municipality may grant a franchise in the manner provided by law to a privately owned public utility to distribute electric power within the municipality and such privately owned public utility shall purchase the physical property of such co-

---

**3.** A rural area is defined as "any area of the United States not included within the boundaries of any city, town or village having a population in excess of fifteen hundred inhabitants...." *Section 394.020(3)*.

operative located within the boundaries of the municipality.

Under this section, when a rural area served by a cooperative is annexed into a city, the cooperative has the authority to continue selling electricity to its members in the formerly rural area.

 Farmers' contends that section 394.080 is the only controlling statute in this case, and that under that statute, it has the authority to provide electric service to Crossroads, a new structure on the annexed land. We disagree. To shed light on the proper interpretation of section 394.080, it must be read in conjunction with other statutes involving related subject matter. *State v. Knapp*, 843 S.W.2d 345 (Mo. banc 1992). All consistent statutes relating to the same subject are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194 (Mo. banc 1991). Considering the entire legislative scheme and the plain meaning of the language used, the Court must attempt to harmonize each statutory enactment. *AG Processing, Inc. v. South St. Joseph Indus. Sewer Dist.*, 937 S.W.2d 319, 324 (Mo.App.1996).

 There are several statutes that pertain to the powers and limitations of municipally owned electric utilities and rural electric cooperatives to provide electric service. Section 394.315.1(2) states that "[n]othing in this section shall be construed to confer any right on a rural electric cooperative to serve new structures on a particular tract of land because it was serving an existing structure on that tract." Under this section, as the plain language indicates, a rural cooperative may not serve "new structures" on a particu-

lar tract of land merely because it was serving an existing structure on that tract of land. In *Union Electric Company v. Platte–Clay Electric Cooperative, Inc.*, 814 S.W.2d 643, 647 (Mo.App.1991), the court construed this statute to be a limitation on a cooperative's grandfather rights under section 394.080 to continue serving its members' structures on land annexed into a city.[4] In that case, the court found that "[t]he meaning of the language of section 394.315.1 is plain and clear. The statute prohibits a rural electric cooperative ... from providing electrical energy to new structures on a particular tract of land [which has ceased to be in a rural area] even though it was serving an existing structure on that tract...." *Id.* at 647–48; *see also Utilicorp United Inc. v. Platte–Clay Elec. Coop., Inc.*, 799 S.W.2d 108, 110 (Mo.App.1990).[5] In this case, Farmers' may not provide service to Crossroads merely because it has the authority under section 394.080.1(4) to continue providing service to the structures it was serving before the land was annexed.

Moreover, Farmers' is not entitled to provide electric service to Crossroads pursuant to section 394.315.2. That section, in pertinent part, provides:

Once a rural electric cooperative, or its predecessor in interest, lawfully commences supplying retail electric energy to a structure through permanent service facilities, it shall have the right to continue serving such structure, and other suppliers of electrical energy shall not have the right to provide service to the structure except as might be otherwise permitted in the context of municipal annexation, pursuant to section 386.800 ... and section 394.080 ...

---

4. In *Union Electric*, construction of the new structure began after annexation, as in this case, but the cooperative provided electricity for its construction. The electric company sought an injunction restraining the cooperative from further providing electricity. The court of appeals held that the trial court had jurisdiction to consider issuing the injunction because there were no concomitant rights between the cooperative and the company to serve the new structure.

5. In *Utilicorp*, construction of the new structure began after annexation, as in the present case, but the cooperative and its member agreed that upon completion the cooperative would provide electricity to the new structure. The electric company sought an injunction restraining the cooperative from providing electricity to the new structure in the future. The court of appeals held that the trial court had jurisdiction to consider the injunction because there were no concomitant rights between the cooperative and the company to serve the new structure.

Because Farmers' never provided electric service to Crossroads prior to annexation, section 394.315.2 does not provide a basis for Farmers' to provide electric service to Crossroads.

In support of its claim, Farmers' cites *Empire District Electric Company v. Southwest Electric Cooperative,* 863 S.W.2d 892 (Mo.App.1993). In *Empire,* an electric company holding a franchise to provide electric service in a city sought an injunction preventing a rural electric cooperative from providing electric service to a Wal–Mart after its construction. *Id.* The court held that the cooperative, rather than the utility, was entitled to provide electric service to the Wal–Mart. *Id.* at 898. There are two relevant factual distinctions between *Empire* and the present case. First, in *Empire,* the building was already under construction when the land on which it was located was annexed. *Id.* at 893. In the present case, the land was annexed in 1994, and construction on Crossroads did not begin until 1996. Second, the rural electric cooperative in *Empire* had already begun providing electric service to the structure at the time of annexation. *Id.* In the case at bar, Farmers' has never provided electricity to Crossroads.

The city, rather than Farmers', is the lawful supplier of electricity to Crossroads pursuant to sections 91.010 and 386.800.2. Section 91.010 provides that a municipality has the authority to operate electric power plants and to supply its inhabitants with electric power. Pursuant to section 386.800.2, a municipally-owned electric utility may extend, pursuant to lawful annexation, its service territory to include any structure located in a newly annexed area that has not received permanent service from another supplier within ninety days prior to the effective date of the annexation. Under the plain meaning of the language in section 386.800.2, the city is entitled to provide electric service to Crossroads.

Once the land in the contract was annexed, Farmers' no longer had the right to provide electric service to any new structures built on the land. Therefore, the contract, to the extent that it provided that all the land in the contract would be serviced by Farmers', became illegal as it applied to any new structures built on the land after annexation, including Crossroads. However, the issues of whether the contract became illegal after annexation and whether the department breached the contract are separate and distinct issues. The latter issue is considered under Point II.

## Point II

Farmers' second point on appeal is that the trial court erred in entering judgment in favor of the department on Farmers' petition for breach of contract. Farmers' claims that even if it cannot legally serve Crossroads, the illegality was created by the deliberate voluntary act of the department in requesting annexation, thereby preventing Farmers' from legally fulfilling its obligations contained in the September 10, 1986, contract.

If a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party. *Grannemann v. Columbia Ins. Group,* 931 S.W.2d 502, 506 (Mo.App.1996). Missouri law implies a covenant of good faith and fair dealing in every contract. *Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 368 (Mo.App. 1996). A party cannot by its own act place itself in a position to be unable to perform a contract, then plead that inability to perform as an excuse for nonperformance. *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 2465, 135 L.Ed.2d 964 (1996) (plurality opinion); *Miles Homes Div. of Insilco Corp. v. First State Bank of Joplin,* 782 S.W.2d 798, 802 (Mo.App.1990); *Arnett v. USX Corp.,* 763 S.W.2d 169, 171 (Mo.App. 1988); *see also Restatement (Second) of Contracts section 261.* A party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract. *Matter of Financial Corp.,* 17 B.R. 497, 504 (Bankr.W.D.Mo.1981).

In this case, the contract between Farmers' and the department was not illegal at its inception. At the time the contract was entered into, the land in the contract was not yet annexed. It was located in a rural area, and Farmers' had the right to provide

electricity to the facilities, including any new facilities, on the land. It was the annexation of the land, not anything inherent in the law itself, that made the contract illegal as it pertained to Crossroads. Not only did the department not take "virtually every action within its powers to perform its duties under the contract," it was the deliberate, voluntary conduct of the department in requesting annexation that prompted the government action that made the contract illegal as it pertained to Crossroads. While the department did have a legal right to request annexation under section 71.012.2, by doing so the department violated the good faith covenant of the contract and breached its contract with Farmers'. As Farmers' points out, had the annexation been involuntary, the situation would be different. As it stands, the department has breached the contract by deliberately requesting the annexation of the land in the contract.

■ The department argues that annexation is a valid exercise of the police power and that Farmers' contractual rights are subject to the exercise of this power, despite the fact that annexation may make the contract illegal. Annexation is part of the municipal police power. However, we again note that there was not an involuntary annexation in this case. The department voluntarily requested annexation. The police power in this case belonged to the city and was exercised by the city, not the department. The act of requesting and agreeing to annexation did not involve an exercise of police power by the department. Therefore, the department cannot use the exercise of police power as an excuse for its breach of contract.

■ The department further argues that a contract with the State should not be interpreted to include a covenant that the State will not disable its performance by a subsequent sovereign act. However, we find that the department's act of voluntarily agreeing to annexation was not a sovereign act. The mere fact that the State is the actor does not make an act sovereign for the purpose of subordinating contractual rights. In this case, requesting annexation is not a power unique to the state. Rather, it is an act that can be done by any party, public or private, that meets the requirements of section 71.012. If the state's act of requesting and agreeing to voluntary annexation would be considered a sovereign act, it would be difficult to imagine any act by a government entity that would not be considered sovereign. If we were to adopt the department's reasoning, any government entity would be released from its contractual obligations by taking action to void the contract and justifying its action by contending it was a "sovereign act."

The department also contends that it did not contract to relinquish the right to request voluntary annexation, and, therefore, Farmers' assumed the risk of annexation. However, Farmers' was not required to provide in the contract that the department not take active steps to avoid its contractual obligations. It is assumed in every contract that the parties will not avoid their obligations under the contract. The department may not enjoy the benefits of its contract with Farmers' while avoiding its obligations under it.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded with directions to enter judgment in favor of Farmers' on the breach of contract claim and to determine the amount of damages to Farmers' resulting from the breach of contract.

All concur.