Bradly S. BOLZ and Patricia Bolz,
Plaintiffs–Respondents,

v.

Isaac R. HATFIELD, Defendant,

and

Sang Leininger, Defendant–Appellant.

No. 23614.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 27, 2001.

Motion for Rehearing or Transfer to
Supreme Court Denied March 20, 2001.

Application to Transfer Denied
April 24, 2001.

Lee H. Bushie, Beger & Bushie, LLC, Rolla, Attorney for Appellant.

Joel B. Laner, Hazelton, Laner & Batson, Kansas City, Attorney for Respondents.

PARRISH, P.J.

Bradly S. Bolz and Patricia Bolz (plaintiffs) sought determination of their and Sang Leininger's (defendant) respective interests in certain real estate situate in Phelps County, Missouri. The trial court entered summary judgment declaring plaintiffs to be holders of "fee simple interest in the Property." Defendant appeals. This court affirms.

Prior to November 7, 1994, Isaac R. Hatfield, a single person, held title in fee simple absolute to the real estate in question. On November 7, 1994, Mr. Hatfield executed a beneficiary deed to the property, as grantor, to defendant, as grantee beneficiary. The purpose of the beneficiary deed was to effect a nonprobate transfer of the real estate as permitted by §§ 461.003 [1] to 461.081, the "Nonprobate Transfers Law of Missouri." Section 461.033.1,[2] as it existed at the time the beneficiary deed was executed, provided:

Provision for a nonprobate transfer may be revoked in whole or in part and the beneficiaries changed during the lifetime of an owner or surviving joint owner *unless it is expressly made irrevocable with consent of any transferor involved* .... [Emphasis added.]

The beneficiary deed from Mr. Hatfield to defendant included the provision:

This Beneficiary Deed is executed pursuant to Chapter 561[sic] RSMo. It is not effective to convey title to the above-described real estate until Grantor's death or the death of the last to die of two or more Grantors. This deed is hereby expressly made irrevocable and not subject to change *unless Grantee fails to pay the property tax due on the property within thirty days of the yearly payment date for said tax* or Grantor suffers a financial emergency which requires the sale of this property to cure the financial emergency. [Emphasis added.]

1. References to statutes are to RSMo 1994 unless stated otherwise.

2. This statute was amended in 1995. § 461.033.1 and .2, RSMo Cum.Supp. 1999, provides:

1. A beneficiary designation may be revoked or changed in whole or in part during the lifetime of the owner. A revocation or change of a beneficiary designation involving property of joint owners may only be made with the agreement of all owners then living.

2. A subsequent beneficiary designation revokes a prior beneficiary designation unless the subsequent beneficiary designation expressly provides otherwise.

Thereafter, on March 15, 1996, Mr. Hatfield executed a general warranty deed conveying the same real estate to plaintiffs. The March 15 deed did not recite the reservation of any interest by Mr. Hatfield or that it was subject to any interest of defendant.

The parties to this litigation were parties to a prior action that determined the beneficiary deed dated November 7, 1994, conveyed "a conditional remainder interest" to defendant. Judgment in the prior case was entered November 4, 1997. It declared, as is applicable to this case:

F. The intent and effect of the *Beneficiary Deed* from Isaac Hatfield to [defendant] dated November 7, 1994 and recorded in Document Number 9407298, is found by this Court to have the intent and effect of a conveyance of a conditional remainder interest in and to the following real estate situated in Phelps County, Missouri, more particularly described as follows:

All of the NW¼ of, Block 80 in Bishop's Third Addition to Rolla, Missouri.

G. That [plaintiffs] retain and hold all remainder of the right, title and interest in and to the above-described property by virtue of the *General Warranty Deed* dated March 15, 1996 from Isaac R. Hatfield to [plaintiffs] recorded in the office of the Recorder of Deeds of Phelps County, Missouri in Document Number 9601482, subject to the conditional remainder interest of [defendant].

Plaintiffs filed the case that is the subject of this appeal January 29, 1999. Plaintiffs' petition sought determination of "their rights, title, and interest and the rights, title, and interest of [defendant] in the Property, specifically vesting fee simple title in them" and their costs and attorney fees.

The trial court found defendant did not pay 1996 or 1997 city or county real property taxes as required by the beneficiary deed by which defendant claimed an interest in the property. It concluded defendant thereby failed to satisfy the condition imposed by the beneficiary deed; that defendant had forfeited her "Conditional Remainder Interest" in the property so that the interest "re-vests in Mr. Hatfield." The trial court concluded that plaintiffs, "as a result of the Warranty Deed by Hatfield, obtained all of ... Hatfield's interest in the Property, subject to the Conditional Remainder Interest of [defendant]." The trial court entered judgment dated March 28, 2000, declaring:

1. As a result of the forfeiture by [defendant] under the requirements of the Beneficiary Deed, her Conditional Remainder Interest in the Property now lies in [plaintiffs], who now hold a fee simple interest in the Property.

2. As a result the granting of a fee simple interest in [plaintiffs] in paragraph one herein above, all other claims are rendered moot....

The trial court denied plaintiffs' request for attorney fees. Costs were taxed to plaintiffs.

Defendant's first point on appeal argues that the issues purportedly adjudicated in this case had been determined in prior litigation between the same parties; that the doctrine of res judicata precludes the determination the trial court made.

■■■ Defendant correctly points out that the doctrine of res judicata precludes a party from relitigating a previously litigated claim.

Res judicata is based on the principle that a party should not be able to litigate a claim and then, after an adverse judgment, seek to relitigate the identical claim in the second proceeding. *State ex rel. Shea v. Bossola,* 827 S.W.2d 722, 723[1] (Mo.App.1992). *"Res judicata*

thus protects the adversaries of parties who have had a full and fair opportunity to litigate their claims from 'the expense and vexation attending multiple lawsuits.' " *Bendis v. Alexander and Alexander, Inc.,* 916 S.W.2d 213, 217 (Mo. App.1995) (citing *Fleming v. Mercantile Bank & Trust Co.,* 796 S.W.2d 931, 933 (Mo.App.1990)). Moreover, res judicata " 'conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Bendis* at 217 (citing *Fleming* at 933–934).

The effect of res judicata is to prohibit the same parties from bringing a subsequent proceeding as to " '[e]very issue of fact which was or might have been litigated in the first proceeding.... Furthermore, a former judgment is not only conclusive as to matters in issue and embraced within the issue, but as to all matters which the parties could have alleged to sustain their action or defense.' " *Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910–11 (Mo. App.1990) (citations omitted). *Delhagen v. Miracle Recreation Equipment Co., Inc.,* 924 S.W.2d 582, 585 (Mo. App.1996).

 Res judicata bars a second action if "four identities" are present: (1) an identity of the thing sued for; (2) an identity of the cause of action; (3) an identity of the persons and parties to the action; and (4) an identity of the quality of the person for or against whom the claim is made. *Id.* A fact question that was actually and directly in issue in a former suit and was judicially determined in that suit is conclusively decided so far as the parties to the action and persons in privity with them are concerned. *Norwood v. Norwood,* 353 Mo. 548, 183 S.W.2d 118, 123 (1944).

The November 4, 1997, judgment determined the respective interests of the parties to that case (who are the parties to this case), as of that date, in the real estate in question. It did not determine what would constitute a future failure by defendant to meet the conditions imposed by the beneficiary deed regarding "pay[ment] [of] property tax due on the property." It could not have addressed whether defendant had complied with those conditions with respect to 1997 property taxes. The date that judgment was entered was not "within thirty days of the yearly payment date for said tax." [3] It is not necessary to address whether defendant's non-payment of 1996 taxes could have been addressed in the prior litigation. Whether defendant paid those taxes has no bearing on defendant's failure to pay subsequent years' taxes.

Res judicata did not bar the trial court's March 28, 2000, determination of the respective interests of the parties in the real estate in question. The first case sought and obtained determination of the parties' respective interests in the real estate at the time that action was brought and tried. The present suit relates to the parties' respective interests in the real estate at a later point in time. In making the determination required by the present suit, defendant's actions, or inaction, since the first suit are considered. The first suit determined the condition of title on November 4, 1997. The present suit determined the condition of title on March 28, 2000. The identity of the thing sued for was not the same. Point I is denied.

**3.** Real estate taxes become delinquent the first day of January next following the year for which they are assessed. § 140.010.

■ Point II bases its claim of trial court error on the affirmative defense of equitable estoppel. Point II is 25 lines long. It extends onto a second page of defendant's brief. It does not comply with directives of Rule 84.04.

Rule 84.04(d)(1) directs:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the *legal reasons* for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error. [Emphasis added.]

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]." [Emphasis in original.]

Defendant's Point II identifies the ruling challenged, the granting of summary judgment for plaintiffs. However, it does not identify any elements of the defense of equitable estoppel. It thereby fails to concisely state legal reasons for its claim of error.

Point II also fails to comply with Rule 84.04(d)(4) which admonishes, with respect to the context of a point relied on, "Detailed evidentiary facts shall not be included." Twelve of the 25 lines of Point II are recitations of facts attributed to plaintiffs' actions in paying property taxes. Those 12 lines are followed by seven lines of conclusory recitations about Mr. Hatfield's conduct that defendant argues should be attributable to plaintiffs.

■ Deficient points relied on do not preserve issues for appellate review. *Murphy v. Aetna Cas. & Sur. Co.,* 955 S.W.2d 949, 951 (Mo.App.1997). Appellate courts, however, do not generally exercise discretion to disregard a defective point unless the defective point impedes disposition of the case on its merits. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). A brief impedes disposition on the merits if it fails to give notice to the other parties and to the appellate court of the basis for the claimed error. *Id.* When that occurs a point must be disregarded, reviewed only for plain error, or the appeal with respect to that point dismissed. *Id.*

The argument portion of defendant's brief identifies and addresses the elements required to support a defense of equitable estoppel. Plaintiffs do not appear to have had difficulty gleaning the basis for the error defendant claims. This court is likewise able to discern the basis for the claimed error. For those reasons, Point II will be treated as if the issue identified in the argument were properly preserved.

Defendant pleaded the affirmative defense of equitable estoppel in the trial court. She contended plaintiffs were estopped from asserting defendant's remainder interest had terminated because of her failure to pay property taxes within 30 days of the yearly payment date. She argued that plaintiffs voluntarily paid the property taxes; that this was inconsistent with their claim that it was defendant's duty to pay the taxes. Defendant contended she would be damaged by enforcement of the condition in the beneficiary deed whereby her interest in the real estate would terminate because of her failure to pay those taxes plaintiffs paid. Point II asserts that the trial court erred in not finding equitable estoppel precluded her

loss of the remainder interest the beneficiary deed had conveyed to her.

■■■■ Equitable estoppel should be applied with great care and caution in each case. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 666 (Mo.1970). In order to rely on estoppel, a party must have exercised reasonable diligence to acquire knowledge of the real facts. *Id.* at 667. The extent of the inquiry and diligence required is determined by the circumstances of the case. *Id.* A party cannot conduct himself or herself with careless indifference to means of information reasonably at hand or ignore highly suspicious circumstances that should warn of danger or loss and thereafter invoke the doctrine of estoppel. *Id.*

The crucial factor with respect to the effect of defendant's failure to pay property taxes is the terms of the beneficiary deed. The beneficiary deed conveyed real estate to defendant, effective upon Mr. Hatfield's death, as permitted by Missouri law in effect at the time of the conveyance. It conveyed a remainder to defendant. Defendant's remainder was subject, however, to certain conditions. Unless those conditions were met, the remainder would revert to Mr. Hatfield.

One of the conditions was that defendant "pay the property tax due on the property within thirty days of the yearly payment date for said tax." Defendant did not pay those taxes for 1996 or 1997.[4]

■■■■ Defendant had knowledge of the requirement that she pay property taxes annually. The face of the beneficiary deed by which she acquired her interest in the real estate stated that requirement. Payment by others of the taxes defendant was obligated to pay should have been a red flag that some action was required of defendant. Defendant had ample warning that she was in danger of losing her remainder interest if she did not pay taxes in accordance with the condition imposed by the beneficiary deed. This court concludes, under these facts, that defendant was not entitled to refrain from satisfying the conditions imposed by the beneficiary deed. "Estoppel is not a favorite of the law and will not 'arise unless justice to the rights of others demands it.'" *Shores v. Express Lending Services, Inc.,* 998 S.W.2d 122, 127 (Mo.App.1999), quoting *Peerless Supply Co., supra,* at 666. Defendant was derelict in not protecting her property rights. Justice does not demand the courts to act with more zeal on behalf of defendant than she chose to do for herself. Point II is denied.

■■■■ Point III is a narration stating that plaintiffs' voluntary payment of real estate taxes on the property in dispute made payment of those taxes by defendant impossible. Point III, as was the case with Point II, does not comply with requirements of Rule 84.04(d). Although undertaking to state a defense of impossibility of performance, Point III does not identify the elements required to be proven in order to support such a defense. It does not concisely state legal reasons for that claim of error. However, the argument portion of defendant's brief alleges a "doctrine of impossibility" and identifies cases that declare what is required to support that doctrine in contract actions. Although no authority is provided for the proposition that the same doctrine applies to cases involving defeasible real estate

---

4. The record on appeal reveals that defendant did not pay taxes for 1998. The trial court did not include failure to pay 1998 taxes in the findings recited in its March 28, 2000, judgment. This court, therefore, does not consider the effect of defendant's failure to pay 1998 taxes in determining this appeal.

interests, this court will consider Point III on its merits.

■ Defendant bases her impossibility argument on the principle, "If a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party." *Farmers' Elec. Co-op., Inc. v. Missouri Dept. of Corrections,* 977 S.W.2d 266, 271 (Mo. banc 1998). Defendant argues that plaintiffs rendered her performance of the condition that she pay property taxes impossible. She contends, therefore, that her remainder interest in the real estate did not revert to plaintiffs who were subsequent grantees of Mr. Hatfield's interests.

Plaintiffs' affidavit in support of their motion for summary judgment recites that they paid city and county property taxes assessed against the property in dispute for 1996, 1997 and 1998. Their affidavit states defendant made no attempt to reimburse them for the 1996 or 1997 taxes. The affidavit states, according to plaintiffs' best understanding and belief, that defendant made no effort to timely pay the 1996, 1997 and 1998 taxes.

Defendant filed a response to plaintiffs' motion for summary judgment that included the statement that she attempted to pay real estate taxes in 1996 and was told they had been paid by plaintiffs. The response acknowledges that plaintiffs paid the real estate taxes for 1996, 1997 and 1998. It makes no reference to any attempt by defendant to pay real estate taxes other than those for 1996. It makes no statement concerning any attempt to reimburse plaintiffs. Rather, defendant's response asserts that "Plaintiffs' [sic] never intended nor sought reimbursement for City and County property taxes in question."

Defendant filed an affidavit with her response to plaintiffs' motion for summary judgment in which she states she received a letter from an attorney representing plaintiffs in January 1998. Defendant's affidavit states she directed her attorney to inquire of plaintiffs' attorney whether plaintiffs "wanted to discuss any issues regarding the property taxes." The affidavit states:

. . .

4. Neither my attorney nor myself ever received a response from the Plaintiffs or the Plaintiffs' attorney regarding the issues of property taxes.

5. At the time that the Beneficiary Deed was executed neither myself nor Mr. Hatfield intended that the condition of property tax payment would ever benefit a third party or subsequent purchaser of the property herein.

6. The Plaintiffs herein have voluntarily paid all property taxes in question and have refused to discuss this issue with myself or my attorney. For this reason, I took no further action regarding the payment of the property taxes.

. . .

■ "A party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract." *Farmers' Elec. Co-op., Inc.,* 977 S.W.2d at 271. Defendant's affidavit discloses no tender of payment of property taxes for 1997. It discloses no tender to plaintiffs of any amount in reimbursement for those taxes. It acknowledges that plaintiffs paid the taxes.

Copies of three letters were attached to defendant's affidavit. They are a copy of a letter from plaintiffs' attorney to defendant's attorney dated January 14, 1998, and copies of two letters from defendant's

attorney to plaintiffs' attorney dated January 20, 1998, and November 6, 1998.

Defendant's attorney's letter dated January 20, 1998, asked for documentation reflecting real estate taxes paid by plaintiffs and stated defendant "will reimburse in full for these payments." The November 6, 1998, letter stated that since defendant's attorney had not received documentation or information regarding property tax, he assumed it was "no longer an issue."

The crucial factor in this case was defendant's failure to pay property taxes. That failure was not cured by defendant's attorney's request for "documentation or information," or by his assurance that defendant was going to reimburse plaintiffs for taxes they paid. Defendant could have determined the amounts of taxes on the property from public records and tendered payment. Failure to determine the amount of taxes imposed on the property and paid by plaintiffs through review of public records does not demonstrate defendant took every action within her powers to satisfy the condition imposed on her interest in the real estate. Her attorney's statement that she would pay is not a tender of performance.[5] Point III is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

---

5. "Tender combines readiness, willingness and ability to pay." *North Star Apartments v. Goppert Bank & Trust Co.*, 657 S.W.2d 253, 257 (Mo.App.1983). Failure to determine the amount necessary to be paid when that information is available from public records does not demonstrate a readiness to pay.