

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| PREMIER VALET, LLC, | ) | ED110242 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| v. | ) | 20SL-CC05673 |
| | ) | |
| PREMIER VALET SERVICES, LLC, AND | ) | Honorable Jason D. Dodson |
| BRIAN CANAVAN, | ) | |
| | ) | Filed:  August 9, 2022 |
| Appellants. | ) | |

Premier Valet Services, LLC, and Brian Canavan (collectively, Defendants) appeal from the trial court's grant of summary judgment in favor of Premier Valet, LLC (Plaintiff) for breach of a promissory note and guaranty.  We affirm.

## BACKGROUND

On December 20, 2012, Defendants and Plaintiff signed a promissory note (Note), wherein Defendants agreed to pay Plaintiff $260,000 by January 1, 2018.  Specifically, the Note required Defendants to pay $20,000 by December 27, 2012, with subsequent monthly installments of $2,725.80 and any accrued interest.  The Note defined a default as occurring when Defendants fail "to pay any sum due and owing under this note when due and payable . . . ."  Brian Canavan simultaneously executed a note guaranty agreement (Guaranty), in which he individually guaranteed "full and prompt payment when due" of the remaining balance on the Note.  Both the Note and Guaranty entitled Plaintiff to

recover attorneys' fees and costs from Defendants. Defendants' purposes for securing the funding were not set forth in either document.

From December 2012 through March 2020, Defendants operated a valet business, providing services to events, restaurants, clubs, venues, and bars in St. Louis County. Defendants did not pay the balance and accrued interest pursuant to the Note by January 1, 2018. As of Defendants' last payment on February 5, 2020, the outstanding principal balance was $145,594.69. The following month, the COVID-19 pandemic struck, resulting in numerous executive orders closing restaurants, bars, and clubs, limiting large gatherings of people, and ordering individuals to stay at home for periods of time beginning March 17, 2020.

Eight months later – and nine months after Defendants' last payment – Plaintiff filed its petition against Defendants for breach of contract on the Note and against Canavan for breach of contract on the Guaranty. Defendants raised the affirmative defense of impossibility, arguing the COVID-19 pandemic made it impossible for them to continue operating their valet services business, which made it impossible to repay the Note.

On April 16, 2021, Plaintiff moved for summary judgment on its claims for breach of the Note and Guaranty. Defendants filed a response, arguing the affirmative defense of impossibility barred Plaintiff's claims as a matter of law. On October 6, 2021, the trial court granted Plaintiff's motion. The court found no genuine dispute as to the material facts establishing the elements for breach of contract on the Note and Guaranty. It rejected Defendants' impossibility defense because (1) "Defendants' obligation is to repay the Note, *not* run its business so that it can repay the Note," and (2) Defendants did not take "virtually every action within its powers to perform its duties under the contract."

This appeal follows.

2

**DISCUSSION**

Defendants raise three points on appeal. First, Defendants argue the trial court erred in entering summary judgment for Plaintiff on its first count for breach of contract because the doctrine of impossibility barred Defendants from fulfilling the underlying performance of the Note in that the COVID-19 pandemic and responsive changes in the law made performance unsafe and illegal. Second, Defendant asserts that if its first point is successful, then the trial court also erred in granting summary judgment regarding the Guaranty. Finally, Defendant claims that if its first two points are successful, then the trial court further erred in awarding damages under the Note, including interest, late fees, costs, and attorneys' fees. Plaintiff responds and brings a motion for attorney's fees incurred in this appeal, which was taken with the case.[1]

*Standard of Review*

"The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)). In reviewing the decision to grant summary judgment, we apply the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is proper only if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* "Additionally, where the defendant has raised an affirmative defense, a claimant's right to judgment depends just as much on the *non-viability* of that affirmative defense as it does on the *viability* of the claimant's claim." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply*

---

[1] Plaintiff filed a motion to strike Defendant's statement of facts for failure to comply with Rule 84.04(c), which was taken with the case. Plaintiff's motion is denied.

3

*Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis in original). Thus, a claimant must also show that the affirmative defense fails as a matter of law. *Id.*

The summary judgment record "is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Green*, 606 S.W.3d at 116.

<u>*Analysis*</u>

This appeal presents a matter of first impression in Missouri: was Defendants' performance rendered impossible by the COVID-19 pandemic? The impossibility doctrine provides that "[i]f a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party." *Breitenfeld v. School Dist. of Clayton*, 399 S.W.3d 816, 835 (Mo. banc 2013) (quoting *Farmers' Elec. Co–op., Inc. v. Missouri Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998)). The party asserting impossibility must demonstrate that "virtually every action possible to promote compliance with the contract has been performed." *Id.*

Defendants failed to demonstrate they took any action – much less virtually every action possible – to perform the terms of the Note. Defendants' statement of additional material facts merely asserted that they could not operate their valet services business in a limited capacity, presumably because there were no events requiring valet services during the early days of the COVID-19 pandemic. They did not specify any efforts to pay the Note, such as attempts to obtain funds from sources other than the revenue from their valet services business or to even negotiate terms with Plaintiff for the duration of the COVID-19 pandemic. We note Plaintiff did not assert its rights pursuant to the default terms of the Note when it matured on January 1, 2018, instead waiting until November 2020 – nearly three years later – to file suit. Defendants claim that the Note implies the continued operation of their business was

4

necessary to pay the Note. However, as astutely found by the trial court, Defendants conflated performance pursuant to the Note (repayment of a loan) with running their business in order to repay the Note. The fact that it may have been impossible to operate a valet services business during the COVID-19 pandemic does not render it *impossible* to perform the terms of the Note.

Defendants primarily rely on a case from a trial court in New York to support their argument that the impossibility doctrine applies here. *See 267 Development, LLC v. Brooklyn Babies & Toddlers, LLC*, 2021 WL 3371187 (N.Y. Sup. Ct. 2021). In *Brooklyn Babies*, a commercial tenant raised the impossibility doctrine to excuse its failure to pay rent during the COVID-19 pandemic. *Id.* at *1. Under New York law, "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance *objectively impossible.*" *Id.* at *2 (emphasis added). The New York court cited a newsletter that argued "impossibility may provide grounds for excusing performance if, for example, government responsive measures such as shutdowns, travel bans, or quarantines entirely preclude a party from performing its contractual obligations." *Id.* The court concluded the shutdown of the commercial tenant's business precluded it from performing its contractual obligations, and therefore the impossibility doctrine excused its failure to pay rent. *Id.*

However, *Brooklyn Babies* was not appealed, and the trial court's reasoning has been repeatedly rejected in subsequent cases from higher courts in New York holding that the impossibility doctrine does not excuse lease obligations during the COVID-19 pandemic. *See e.g., 558 Seventh Ave. Corp. v. Times Square Photo, Inc.*, 149 N.Y.S.3d 55 (N.Y. App. Div. 2021) (electronic sales and repair store's payment of rent was not rendered impossible by its reduced revenues during the COVID-19 pandemic); *Fives 160th, LLC v. Zhao*, 164 N.Y.S.3d 427 (N.Y. App. Div. 2022) (COVID-19 pandemic did not excuse a party's lease obligations on the grounds of frustration of purpose or impossibility).

5

We find *City National Bank v. Baby Blue Distributions, Inc.*, a decision from an intermediate appellate court in New York regarding a promissory note and guaranty rather than a lease, is more analogous to this matter. 158 N.Y.S.3d 65, 66 (N.Y. App. Div. 2021). There, the court specifically considered whether Baby Blue was entitled to the defense of impossibility with respect to Baby Blue's repayment of a promissory note during the COVID-19 pandemic. *Id.* The court held the pandemic did not destroy the subject matter of the contract because Baby Blue still possessed or made use of the loaned funds. *Id.* Nor did the pandemic destroy the means of performance because Baby Blue's repayment obligation was not conditioned upon its business remaining a viable concern, and the note provided for repayment of the loan by the guarantors in the event that the business could not perform. *Id.* Moreover, the terms of the note specified that repayment of the full balance was due almost a full year before the start of the pandemic, and Baby Blue did not demonstrate with any specificity how the pandemic rendered them unable to pay. *Id.* Thus, the court rejected Baby Blue's impossibility defense. *Id.*

Accordingly, we find the facts in *Baby Blue* are exactly on point in this matter; as opposed to *Brooklyn Babies*. Here, Defendants were also in default well before they attempted to use the effect of the pandemic on their business to excuse their performance on the Note and Guaranty. As in *Baby Blue*, the Note and Guaranty did not condition Defendants' performance on their business remaining a viable concern. Similarly, Defendants here failed to specifically demonstrate how the pandemic rendered their performance of the Note and Guaranty impossible. *See Baby Blue*, 158 N.Y.S.3d at 66; *see also Times Square Photo*, 149 N.Y.S.3d at 56; *Zhao*, 164 N.Y.S.3d at 427.

In sum, Defendants failed to show they were entitled to the impossibility defense under Missouri law because they failed to demonstrate they took "virtually every action possible" to perform the terms of the Note. We are not persuaded to nonetheless apply the impossibility doctrine by the reasoning in

6

the *Brooklyn Babies*, and instead find that the weight of New York case law supports our conclusion that the impossibility doctrine does not excuse Defendants' performance here.[2] Thus, the trial court did not err in determining Defendants' affirmative defense of impossibility failed as a matter of law. Point I is denied.

Points II and III rely upon viability of the impossibility defense to further assert that the trial court erred in granting summary judgment on the breach of contract claim on the Guaranty, and in awarding damages pursuant to the Note. These remaining two points are denied because Defendants' performance under the Note was not rendered impossible by the COVID-19 pandemic.

Our denial of Defendants' points impacts Plaintiff's motion for attorney's fees incurred in this appeal. Missouri follows the "American Rule," which provides that litigants are generally required to bear the expense of their own attorney's fees absent statutory or contractual authorization. *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002). However, "[i]f a contract provides the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *Clean the Uniform Co. v. Magic Touch Cleaning*, 300 S.W.3d 602, 612 (Mo. App. E.D. 2009). A party also may be allowed to recover attorney's fees on appeal if they are authorized by a written agreement that is the subject of the issues that are presented in the appeal. *Rx Recalls, Inc. v. Devos Ltd.*, 317 S.W.3d 95, 96-97 (Mo. App. E.D. 2010) (internal citations omitted). Here, Plaintiff brought suit for payment pursuant to the Note and Guaranty, both of which provide that Plaintiff shall be entitled to recover all reasonable expenses, including attorney's fees, it incurs in enforcing the Note and

---

[2] Additionally, this Court's own research has revealed cases from other jurisdictions refusing to apply the impossibility doctrine to payment obligations merely because underlying business operations were hindered by the COVID-19 pandemic. *See e.g.*, *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 273 A.3d 186, 197-202 (Conn. 2022); *9795 Perry Highway Mgmt, LLC v. Bernard*, 273 A.3d 1098, 1104-07 (Pa. 2022).

Guaranty.  Accordingly, we grant Plaintiff's motion and remand to the trial court to determine the just and proper amount.

## CONCLUSION

The judgment of the trial court is affirmed.  The case is remanded for the trial court to determine an award of attorney's fees incurred in this appeal.

_____
Lisa P. Page, Presiding Judge

Kurt S. Odenwald, J. and
Thomas C. Clark, II, J., concur.